418 P.2d 579

**STATE** of Arizona, Appellee,

v.

**Mildred COPLEY, Appellant.**

**No. 1538.**

Supreme Court of Arizona,

In Banc.

Oct. 5, 1966.

Rehearing Denied Nov. 1, 1966.

Darrell F. Smith, Atty. Gen., Phoenix, William J. Schafer, Pima County Atty., Tucson, for appellee.

Martin S. Rogers, Tucson, for appellant.

McFARLAND, Justice.

Mildred Copley, hereinafter referred to as defendant, was tried, convicted, and sentenced to serve a term of life imprisonment in the Arizona State Prison for the first degree murder of Donald Copley, hereinafter referred to as the deceased, in violation of A.R.S. § 13–451, § 13–452, and § 13–453. Defendant appeals from the conviction and sentence.

Defendant and deceased had been married approximately three years when defendant divorced deceased on January 13, 1964. There is substantial evidence that during their marriage, and at times after the divorce, deceased was guilty of physical abuses toward defendant.

On Sunday afternoon, March 29, 1964, defendant was leaving her home for work when deceased drove up in his automobile and offered her a ride. On the way deceased and defendant stopped in a bar for a beer, and then continued on to the bar where defendant was employed as a barmaid. She started her work shift at approximately 2:00 p. m. that afternoon. Deceased remained at the bar and continued to drink beer.

Defendant was discharged at approximately 5:00 p. m. because her employer suspected her of drinking beer while on duty. Defendant claims that deceased had pushed to her side of the bar a glass of beer which he had been drinking to give the employer this impression, and it was this act which caused her to lose her job.

After her discharge defendant went to another bar where she told witnesses how she had lost her job. Witnesses in this bar testified that she seemed quite upset and made threats on deceased's life. She claims she did not go directly home because she was afraid of deceased. She next went to her house, changed clothes and picked up her pistol. She arrived at the Brown Derby Tavern at approximately 8:00 p. m. Defendant gave as her reason for going to the second bar that she was afraid of deceased and believed that so long as there was a crowd she would be safe.

A short time later deceased entered and took a place on a stool next to the one on which defendant was sitting. Witnesses in the bar all testified that the couple engaged in conversation and seemed quite amicable. None of the witnesses noticed any loud utterances or argument between deceased and defendant. After the couple had been conversing a short time defendant pulled her pistol from her purse and shot deceased five times. Deceased died from these wounds.

The first two assignments of error concern the admission of State's Exhibit No. 2 which is a photograph taken shortly after the shooting. The photograph is of deceased sitting on the bar stool with the upper portion of his body slumped across the bar. In the lower left hand corner of

the photograph is an object which was later identified by two defense witnesses as defendant's coat.

Burdette Dyer testified that the photograph represented the body of deceased as it appeared after the shooting. Dyer explained he did not remember seeing the coat on the floor because his vision was blocked as to that portion of the scene because of other onlookers. Dyer further stated he could not swear that deceased's arms or legs were not moved slightly between the time of the shooting and when the photograph was taken, but he reaffirmed his statement that he was in a position to observe deceased at the time of the shooting and that the photograph was an accurate representation of how the body appeared directly after the shooting.

■■ Defendant contends the photograph was admitted with insufficient foundation even though the court directed the jury to temporaraily disregard portions other than that showing the body of deceased on the stool. Photographs of the body of deceased are admissible " * * * to show how the murder was committed and to aid the jury in understanding the testimony of the witnesses." State v. Robinson, 89 Ariz. 224, 360 P.2d 474; State v. Barker, 94 Ariz. 383, 385 P.2d 516. The mere fact that the witness cannot positively swear that the photograph is an exact reproduction in every minute detail will not disqualify the exhibit as long as he claims it is a correct reproduction of the scene as he remembers it.

" * * * If the correctness of the photograph as a likeness is shown prima facie, either by the testimony of the person who made it or by other competent witnesses, to the effect that it faithfully represents the object portrayed, it should go to the jury subject to impeachment as to its accuracy. * * * " Underhills Criminal Evidence, 5th Ed., § 118 at 224.

■■■ The admission of photographs as with other real evidence is a matter of discretion with the trial court. State v.

Barker, supra. The admission of this photograph for the limited purpose of viewing deceased and the stool upon which he was sitting at the time of his death was not an abuse of discretion. The objection to the picture was made on the basis the witness could not remember the coat and could not positively identify another man in the picture. The witness stated: "He wasn't moved at this time that I seen him here in that position. * * * " The picture shows deceased sitting on a stool and slumped over on the bar in a forward position. The identity of the officer at the other end of the bar with his back turned to deceased is unimportant. The coat which was lying to the left on the floor was later identified by defendant as belonging to her.

■ The second assignment of error deals with the limited admission of this same exhibit. Defendant charges that the court's statement to disregard the coat created an inference to the jury that the court felt defendant did not have a valid defense. The limited admission is claimed to be a comment on the evidence which is prohibited under the Arizona Constitution, Article 6, Section 27, A.R.S. The statement of the court excluding the coat from testimony to be considered was not a comment on the evidence, nor was it prejudicial, since she herself identified the coat as belonging to her. A mere ruling of the court on an objection is not a comment on the evidence. Beasley v. State, 20 Ariz. 237, 179 P. 647.

The record shows that the judge made it quite clear that the jury was only to *temporarily* disregard that portion of the picture containing the coat until there was proper identification of the coat, which counsel did later on in the trial. Under the facts in the record before us, it is unreasonable to conclude that the jury believed the judge was expressing an opinion as to any defenses to be raised concerning the location of the coat. There was no error in the admission of Exhibit No. 2 or the limiting instruction which accompanied that admission.

Defendant contends the court erred in not giving her requested instruction No. 8 which included the following definition of a felony:

"You are instructed that it is a felony for a man to commit an assault or battery upon a woman, irrespective of amount of force used, because the law provides that an assault or battery which would normally be a misdemeanor, if committed by a man upon a man, becomes a felony when performed by a man upon a woman."

The instruction further provided that in the event defendant killed deceased by resisting his attempt to commit a felony, the jury must find her not guilty. The other provisions in the instruction were adequately covered in the instruction on self-defense.

A.R.S. § 13–462 was adopted from California, West's Annotated Penal Code § 197 and § 198. Both A.R.S. § 13–462 and the California statutes provide that a homicide is justifiable if it is committed in resisting an attempt to commit a felony. In People v. Jones, 191 Cal.App.2d 478, 12 Cal.Rptr. 777, the appellant had taken the life of her husband and her defense was that the homicide was justifiable. The California Penal Code, § 273d, provides:

" * * * 'Any husband who wilfully inflicts upon his wife corporal injury resulting in a traumatic condition is guilty of a felony.' * * * " 191 Cal.App.2d at 481, 12 Cal.Rptr. at 780

The appellant requested an instruction be given that if she were preventing the commission of a felony (specifically, the felony provided for in the California Penal Code, § 273d) the homicide was justifiable. The trial court refused the instruction and this refusal was upheld. The Appellate Court stated:

"It is true that Penal Code section 197, subd. 1, does provide that homicide is justifiable when resisting an attempt to commit a felony. But the section does no more than codify the common law and should be read in the light of it. Taken at face value, and without qualification, it represents an oversimplification of the law today.

"The authorities generally rely on Blackstone for the earliest expression of the rule. He rationalized it in terms of no killing being justified to prevent crime unless the offense was punishable by death. 4 Blackstone's Commentaries, pp. 180–182. But in those days all felonies were capital offenses.

"Perhaps the leading American case on the point is Storey v. State, 71 Ala. 329, 336–341, where the early law is reviewed and rejected, and the application of the rule limited to the commission of felonies that involve a danger of great personal harm, or 'some atrocious crime attempted to be committed by force.' This limitation is today generally recognized. Perkins on Criminal Law, 1957 Ed., pp. 880–883; 1 Wharton's Criminal Law, Anderson, 1957 Ed., pp. 453–456; 1 Warren on Homicide, 1938 Ed., pp. 634–637. Any civilized system of law recognizes the supreme value of human life, and excuses or justifies its taking only in cases of apparent absolute necessity. State v. Nodine, 198 Or. 679, 259 P.2d 1056, 1067–1071.

"In creating the statutory felony of wife-beating the purpose of the legislature was not to issue a license for a wife to kill her husband but to provide a means of dealing with a particular family situation. The punishment provided by a statute is not necessarily an adequate test as to whether life may be taken for in some situations it is too artificial and unrealistic. We must look further into the character of the crime, and the manner of its perpetration (see Storey v. State, supra). When these do not reasonably create a fear of great bodily harm, as they could not if defendant apprehended only a misdemeanor assault, there is no cause for the exaction of a human life. A misdemeanor assault must be suffered without the privilege of retaliating with deadly force. People v. Webster, 13 Cal.

App. 348, 109 P. 637; People v. Anderson, 57 Cal.App. 721, 727, 208 P. 204. The fact that the assault is committed by a husband should not alter the rule. The existence of the matrimonial status should be an additional reason to forego resort to a homicide. The legislative purpose in enacting section 273d, Penal Code, was to reduce domestic conflict, not to promote resort to violence in the household.

"The language of the statute (Pen.Code § 197, subd. 1) lends support to this view. It says that homicide is justifiable in resisting an attempt to murder, or to commit a felony, or to do some great bodily injury. By implication, the felony contemplated by the statute is one that is more dangerous than a personal assault. The trial court instructed the jury fully and correctly on justifiable homicide. There was no error in refusing defendant's requested instruction." 191 Cal. App.2d at 481, 12 Cal.Rptr. at 780.

The felony which defendant claims she killed to prevent was aggravated assault. We agree with the reasoning of People v. Jones, supra. The type of aggravated assault which a defendant would be justified in killing to prevent must be one which reasonably creates a fear of great bodily injury. Otherwise a woman would be permitted to kill in self-defense where a serious assault is not being threatened and there is no fear of great bodily injury. The jury was properly instructed in the law of self-defense so there was no error in refusing the requested instruction.

The fourth assignment of error concerns an instruction given which provided in substance that a defendant may not avail himself of the claim of self-defense if he voluntarily entered into a conflict with deceased for the purpose of reaping revenge. The record shows ample evidence to support this instruction, and this same instruction has been held proper by this court on previous occasions in State v. Randall, 94 Ariz. 417, 385 P.2d 709; State v. Robinson, 89 Ariz. 224, 360 P.2d 474; and in Lepker v. State, 40 Ariz. 186, 11 P.2d 351.

The record shows that the jury was instructed as to every possible valid defense under the evidence, and that the instructions as a whole were both fair and proper statements of the law. State v. Simmering, 89 Ariz. 261, 361 P.2d 4; State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081.

Judgment affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and UDALL and LOCKWOOD, JJ., concur.