106 Ariz. 439 (1970)
477 P.2d 529
STATE of Arizona, Appellee,
v.
Alex L. McINTYRE, Appellant.
No. 1933.
Supreme Court of Arizona, In Banc.
December 7, 1970.
*440 Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.
Robert J. Snyder, Jr., Sierra Vista, for appellant.
UDALL, Justice.
Defendant Alex L. McIntyre was convicted by a jury of second-degree murder and was sentenced to a prison term of not less than ten nor more than twelve years for shooting and killing Raymond W. Thomas, Sr., in December, 1967. The trial court denied defendant's motion to dismiss, his motion for judgment notwithstanding the verdict, and his motion for a new trial. Defendant appeals from the judgment and from the denial of his motions.
For the reasons advanced below, the judgment is affirmed.
The facts of the case are as follows: The shooting death which formed the basis of this action occurred in the evening of December 13, 1967, at Sierra Vista, Arizona, in the mobile home occupied by defendant McIntyre and Helene Kwiatek, with whom he lived. They had invited two of their friends, David Nelson and Emilia Lewis, to come to the trailer for an evening together. The two guests arrived about 8:00 p.m. and the four of them began playing pinochle around the kitchen table. About 11:30 p.m. Raymond W. Thomas, Sr., the former husband of Miss Kwiatek, came to the mobile home. Mr. Thomas and Miss Kwiatek had been divorced for about six months; the divorce decree gave Mr. Thomas custody of the eight children. Following the divorce Mrs. Thomas changed her name back to Miss Kwiatek, as it had been prior to the marriage. Following the divorce, Mr. Thomas had frequently contacted Miss Kwiatek at her place of employment and at her residence, apparently trying to get her to come back to him. On at least two occasions he went into a rage and beat her up. Defendant McIntyre had become acquainted with Miss Kwiatek about three months after her divorce, and after developing a friendship, moved in with her. They apparently shared the costs of rent, food, and other necessities. He had purchased the murder weapon from a pawn shop in Sierra Vista about a month before the shooting.
On the night of the shooting, when Mr. Thomas came to the door of the trailer he told his former wife that there was something urgent about which he had to speak to her. She was concerned that something may have happened to one of the children, so she agreed to let him come in. He went back to the car to turn off the engine. At this point, defendant McIntyre got up from the kitchen table and went to a room in the rear of the mobile home; he returned shortly. His purpose apparently was to pick up the murder weapon, a .32 caliber revolver, and slip it under the waistband or in the pocket of his trousers. He said nothing about the weapon when he returned to the others.
Thomas soon returned to the trailer. When Miss Kwiatek opened the door Thomas charged through. He slapped Miss Kwiatek, causing her to stagger backwards. He then made some vulgar and threatening *441 remarks and lunged toward McIntyre, who was still sitting at the table with his pinochle cards in his hands. Thomas slapped McIntyre across the face. McIntyre arose from his chair and retreated backwards. Thomas continued his advance toward McIntyre, hitting and breaking the kitchen table in the process. Thomas hit McIntyre again. McIntyre pulled the revolver out of the waistband or pocket of his trousers and fired a shot at Thomas. Thomas halted momentarily and then started toward McIntyre again. McIntyre fired a second shot. Thomas stopped momentarily but then appeared to continue his movement toward McIntyre. McIntyre then fired three more shots at Thomas in rapid succession, emptying the cylinder of the revolver (5 cartridges). As these last shots were fired, Thomas clutched his stomach and spun around, exclaiming "Oh Lord, I'm dead, I'm dead!", and fell to the floor. Defendant McIntyre went into hysterics, exclaiming "I didn't mean to kill him! I only wanted to scare him!" He was wandering around with the revolver dangling aimlessly from his hand. The others had him place the revolver on the living room table, where it remained until the police picked it up.
The testimony given and exhibits introduced at the trial indicated the following sequence as related to the path followed by the bullets fired from McIntyre's revolver: The first bullet missed Thomas, ricocheted off the refrigerator, and hit Miss Kwiatek in the leg. McIntyre may have intended this as a warning shot. The second bullet entered Thomas' chest, passed straight through the body, including the heart, and lodged just beneath the skin on the back. Either the impact of the bullet, or the intentional movement by Thomas toward McIntyre, caused Thomas to pivot toward the right. As a result, the third bullet fired from the revolver (the second one to hit Thomas) entered Thomas on the left side of his chest, passed through his body, and lodged just beneath the skin under his right armpit. Thomas' body apparently continued to pivot or spin, as the fourth and fifth shots fired (the third and fourth shots to hit him) entered his back. One lodged in his right lung and the other in or near his spine.
At the trial the state called as witnesses the police officers who investigated the shooting; the doctor who pronounced Thomas dead at the site of the shooting and who later performed the autopsy on Thomas; the owner of the pawn shop from whom defendant McIntyre purchased the .32 caliber revolver used in the shooting; and David Nelson, one of the witnesses to the shooting. The defense called Miss Kwiatek and the woman with whom Miss Kwiatek lived following the shooting. The state called, as rebuttal witnesses, two acquaintances of the deceased. Defendant McIntyre did not testify.
The jury returned a verdict of second-degree murder. Judgment was entered in accordance with the verdict and defendant McIntyre was sentenced to prison for a term of from ten to twelve years.
On appeal, defendant McIntyre makes several assignments of error, which can be summarized as follows:
I. Sufficiency of Evidence: Defendant asserts that there was not sufficient evidence to support the verdict reached by the jury, and that it was therefore error for the trial court to deny his motion to dismiss (at the close of the state's evidence and at the end of the trial), his motion for judgment notwithstanding the verdict, and his motion for a new trial.
II. Refusal to Give Instructions: Defendant asserts that it was error for the trial court to refuse to give certain requested instructions relating to the defense of justification for the commission of the homicide.
III. Giving of Instructions over Defendant's Objection: Defendant asserts that it was error for the trial court to give certain instructions requested by the state, which had been objected to by the defendant on the *442 ground that the evidence presented at the trial did not merit the giving of such instructions.
We will deal with the assignments of error in the order listed above.
I. SUFFICIENCY OF EVIDENCE
Defendant asserts that there was not sufficient evidence presented at the trial to prove the defendant guilty of second-degree murder and that it was therefore error for the trial court to deny his motion to dismiss, his motion for judgment notwithstanding the verdict, and his motion for a new trial. The question before this Court, then, is simply whether the evidence was sufficient to support the verdict.
An examination of the applicable statutes will show the particular elements which make up the offense of which defendant was convicted. A.R.S. § 13-451 defines murder and malice aforethought as follows:
"A. Murder is the unlawful killing of a human being with malice aforethought.
"B. Malice aforethought may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned or malignant heart."
The distinction between first-degree murder and second-degree murder is stated at A.R.S. § 13-452 to be as follows:
"A murder which is perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary or mayhem, is murder of the first degree. All other kinds of murder are of the second degree."
The distinction between murder and manslaughter can be discerned by reference to A.R.S. § 13-455, which defines manslaughter as "the unlawful killing of a human being without malice." (Emphasis added.)
These definitions were incorporated in the instructions given to the jury by the trial court. The trial court also instructed the jury as to the element of self-defense, incorporating in part the provisions of A.R.S. § 13-462 relating to justifiable homicide. The instructions on self-defense are discussed in greater detail in the next section of this opinion. The trial court instructed the jury that if the homicide appeared to have been justified, the defendant should be fully acquitted. A.R.S. § 13-463.
The jury, after being instructed on the law, concluded that the evidence presented at the trial required a verdict of second-degree murder. In other words, the verdict reached by the jury must of necessity have resulted from finding that defendant McIntyre killed the victim, Thomas, with malice, and that the killing was not justified. The concepts of malice and justification are necessarily interrelated, as we have previously defined malice as "the intent to kill without legal justification." State v. Brock, 101 Ariz. 168 at 172, 416 P.2d 601 at 605 (1966); State v. Schantz, 98 Ariz. 200 at 206, 403 P.2d 521 at 524 (1965), cert. denied 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966).
In State v. Chalmers, 100 Ariz. 70, 411 P.2d 448 (1966), we stated that:
"By statute it is provided that the malice aforethought required for murder may be express or implied. It is express when a deliberate intent is shown to take away the life of a person unlawfully. It may be implied `when no considerable provocation appears', or when the circumstances show `an abandoned and malignant heart.' In either case malice is an essential element of the crime of murder. It is specifically not an element required for the crime of manslaughter." 100 Ariz. at 75, 411 P.2d at 451.
*443 In State v. Intogna, 101 Ariz. 275 at 277, 419 P.2d 59 at 61 (1966), we stated that the question of malice is one for the jury, and that the use of a deadly weapon is sufficient evidence for the jury to find express malice.
In the instant case, the finding of malice by the trier of fact must, of necessity, have been made on the basis of the evidence presented at the trial as to the defendant's behavior and the circumstances surrounding it. The fact that the defendant stated after the shooting that he only intended to frighten his victim is evidence that no malice existed. However, that exculpatory statement is not the only evidence upon which the trier of fact had to deliberate in determining the state of the defendant's mind. As was mentioned above, the weapon used by McIntyre was a revolver with a cylinder which held five cartridges. It was necessary that the trigger be pulled each time a shot was to be fired. The last two shots fired by McIntyre hit Thomas in the back, after he had been spun around by the combination of the force of his own forward momentum and the force of impact of the first two bullets to hit him. Even though all of the shots were fired within a time span of only a few moments, the jury may have concluded that McIntyre's firing of the last two shots, after Thomas had been incapacitated and as he was spinning and falling toward the floor, evidenced "an intent to kill without legal justification", i.e., malice. The jury may also have reached that conclusion from the fact that McIntyre resorted to the use of a deadly weapon when he, along with David Nelson, one of the persons playing cards, may have been able to subdue Thomas without having to resort to the use of the deadly weapon. Whatever their reasoning, the members of the jury, by their verdict, reached the conclusion that McIntyre killed Thomas with malice, and that the killing was not justified.
In reviewing the sufficiency of evidence to support a conviction, the evidence must be viewed in a light most favorable to the state, and all reasonable inferences must be resolved against the defendant. In considering whether a verdict is contrary to the evidence, we do not decide whether we would reach the same conclusion as the jury. Rather, the question is whether there is competent evidence to support the conclusion found. State v. Kidwell, 106 Ariz. 257 at 259, 475 P.2d 241 at 243 (1970); State v. Norgard, 103 Ariz. 381 at 382, 442 P.2d 544 at 545 (1968).
The jury observed the witnesses and heard the testimony and reached the conclusion that the defendant was guilty beyond a reasonable doubt of second-degree murder. We have reviewed the record and have determined that the evidence overall is sufficient to support that conclusion. We therefore hold that it was not error for the trial court to deny defendant's motion to dismiss, motion for judgment notwithstanding the verdict, and motion for a new trial.
II. REFUSAL TO GIVE INSTRUCTIONS
The defendant asserts that it was error for the trial court to refuse to give certain instructions relating to the defense of justification for the commission of the homicide.
The section of our statutes dealing with justifiable homicide by a person other than a public officer is A.R.S. § 13-462, which provides that homicide is justifiable when committed by a person:
"1. Resisting an attempt to murder a person, or to commit a felony or to do some great bodily injury upon a person.
2. In defense of habitation, or property, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein. A bare fear of the commission of any offense mentioned in this paragraph is not sufficient to justify a homicide. The circumstances must be sufficient to excite the fears of a reasonable person, and *444 the party killing must have acted under the influence of such fears alone.
3. In the lawful defense of the person, or a wife or husband, parent, child, master, mistress or servant of such person, when there is reasonable ground to apprehend a design to commit a felony, or to do some great bodily injury, and imminent danger of such design being accomplished, but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed. A bare fear of the commission of any offense mentioned in this paragraph is not sufficient to justify a homicide. The circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.
4. Necessarily in attempting, by lawful ways and means, to apprehend a person for any felony committed, or in lawfully suppressing a riot or in lawfully keeping and preserving the peace."
Subsections 1. and 3. above were given substantially verbatim as instructions by the trial court to the jury. Subsection 4. was not given, as it is not relevant to the facts of this case. Subsection 2. was included in the defendant's requested instructions but, as will be discussed in greater detail later on, was refused by the trial court.
In addition to the instructions on justifiable homicide mentioned above, the trial court gave other instructions regarding self-defense. In reviewing these instructions, we were impressed with the care taken by the trial court to properly explain and limit them so as to adequately and fully state the law, but at the same time to avoid surplusage. We are of the opinion that the instructions given properly and adequately informed the jury as to the principle of self-defense.
Defendant, however, contends that it was error for the trial court to refuse to give certain instructions he had requested. The first of those instructions provides that homicide is justifiable when committed by a person:
"* * * in defense of habitation, or property, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or manifestly intends or endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein. A bare fear of the commission of any offense mentioned in this paragraph is not sufficient to justify homicide. The circumstances must be sufficient to excite the fears of a reasonable person, and the person killing must have acted under the influence of such fears alone."
This requested instruction is taken substantially verbatim from A.R.S. § 13-462 (2). As was mentioned above, A.R.S. § 13-462(1) and § 13-462(3) were incorporated in instructions given to the jury. Defendant McIntyre contends that it was error for the trial court to refuse to give the instruction quoted immediately above, along with a requested instruction defining burglary (A.R.S. § 13-302) and one defining aggravated assault (A.R.S. § 13-245). Defendant's theory apparently was that if these instructions had been given, then if the jury was of the opinion that the victim of the shooting, Thomas, was guilty of burglary or aggravated assault because of his actions prior to the shooting, and was therefore attempting to commit a felony, then the jury could have found that the defendant was justified in killing Thomas under A.R.S. § 13-462(2).
This is not the first time this theory has been advanced to this Court. For example, in State v. Copley, 101 Ariz. 242, 418 P.2d 579 (1966), the defendant was a woman who had shot and killed her husband. With regard to the defense of justification, she argued on appeal that A.R.S. § 13-462 provided that a homicide is justifiable if it is committed in resisting an attempt to commit a felony. The felony she *445 had in mind was aggravated assault. In response to that argument we stated that the type of aggravated assault which a defendant would be justified in killing to prevent, must be one which reasonably creates a fear of great bodily injury. 101 Ariz. at 246, 418 P.2d at 583. We are of the opinion that the same principle would apply in the present case. In other words, it is our opinion that the statute does not give a person carte blanche to shoot another simply because that other person is committing an act which under the statutes might be considered a felony. Rather, it is necessary that the act "reasonably creates a fear of great bodily injury." This requirement was properly stated and appropriately included in the instructions given to the jury by the trial court in the instant case.
The long-established rule is that where requested instructions are adequately covered by other instructions of the trial court, it is not error to refuse them. State v. Brooks, 103 Ariz. 472 at 474, 445 P.2d 831 at 833 (1968); State v. Wallace, 83 Ariz. 220 at 222, 319 P.2d 529 at 530 (1957).
We have reviewed the instructions given by the trial court to the jury, including the instructions on self-defense as discussed above. We are of the opinion that they adequately and correctly advised the jury of the law governing the case, and we accordingly hold that there was no error committed by the trial court in refusing to give the requested instructions.
III. GIVING OF INSTRUCTIONS OVER DEFENDANT'S OBJECTION:
Defendant McIntyre asserts that it was error for the trial court to give certain instructions requested by the state, which had been objected to by the defendant on the ground that the evidence presented at the trial did not merit the giving of such instructions.
The instructions to which defendant objects deal with the crimes of first-degree murder, second-degree murder, and voluntary manslaughter. An instruction on involuntary manslaughter was not given, pursuant to a stipulation entered into by counsel in chambers.
We have previously held that if the evidence presented in a case is sufficient to support some theory by which the jury might have reasonably found the defendant guilty of the offense which was the subject of an instruction, then the instruction was properly given. State v. Anderson, 102 Ariz. 295 at 296, 428 P.2d 672 at 674 (1967).
The instructions as given by the trial court in the instant case are consistent with the wording of the sections of the Arizona Revised Statutes which apply to the crimes involved. Defendant does not contend that they are incorrect statements of the law; rather, only that the evidence presented did not merit the giving of such instructions.
It is, of course, the general rule that instructions must be predicated on some theory of the case which may be found in the evidence, and, when not so predicated, they should not be given, as their tendency would be to mislead the jury. State v. Singleton, 66 Ariz. 49 at 56, 182 P.2d 920 at 924 (1947); Macias v. State, 36 Ariz. 140 at 154, 283 P. 711 at 716 (1929).
Conviction of McIntyre for voluntary manslaughter would require evidence of an unlawful (i.e., unjustified) killing of Thomas by McIntyre without malice (i.e., without the intent to kill), upon a sudden quarrel or heat of passion. A.R.S. §§ 13-455, 13-456. Conviction for second-degree murder would require evidence of an unlawful killing with malice. A.R.S. §§ 13-451, 13-452. Conviction for first-degree murder would require evidence of an unlawful killing of Thomas by McIntyre with malice, and in addition, evidence that the killing was willful, deliberate, and premeditated. A.R.S. §§ 13-451, 13-452.
As to the question of premeditation, the evidence was such that the jury might reasonably have concluded that McIntyre armed himself when Thomas came to the trailer and when Thomas became belligerent *446 and unruly, took advantage of the situation to carry out a preconceived plan to kill him. As to the question of malice, we stated earlier in this opinion that the jury might well have concluded that the killing was done with malice from the fact that McIntyre apparently fired two shots into Thomas' back after Thomas was incapacitated, or from the fact that McIntyre, along with the male guest present, may have been able to subdue Thomas without having to resort to the use of a deadly weapon.
Under the evidence presented, the jury might properly have reached the conclusion that McIntyre was guilty of murder in the first degree, or of murder in the second degree, or of voluntary manslaughter, or, in the alternative, the jury may have acquitted the defendant on the ground of self-defense. Under these circumstances, it was incumbent upon the trial court to give instructions to the jury regarding the offenses of which McIntyre might reasonably be convicted, and it was eminently correct for the trial court to use the language it did in so instructing the jury. The instructions complained of, when examined as a whole, show that the trial court properly explained and limited them so as to confine them to the theories of the case which might appear upon the evidence.
We accordingly hold that the trial court was not in error in giving the instructions complained of.
For the reasons advanced above, the judgment is affirmed.
LOCKWOOD, C.J., STRUCKMEYER, V.C.J., and McFARLAND and HAYS, JJ., concur.