565 P.2d 526

The STATE of Arizona, Appellee,

v.

Nelson Travis BARR, Appellant.

No. 2 CA–CR 963.

Court of Appeals of Arizona, Division 2.

March 29, 1977.

Rehearing Denied May 24, 1977.

Review Denied June 7, 1977.

Bruce E. Babbitt, Atty. Gen. by Russell Piccoli, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by William H. Callaway and Kenneth J. Peasley, Asst. Public Defenders, Tucson, for appellant.

HOWARD, Chief Judge.

Appellant appeals from his conviction of voluntary manslaughter while armed with a gun. The conviction arose out of the fatal shooting of Timothy Tylutki as he and several companions left appellant's yard after attempting to steal some wooden chairs valued at less than $5.00.

At trial, appellant testified that on December 21, 1970, he was living in a small house in back of an antique store in the area of the University of Arizona. Because of a number of thefts and burglaries in the neighborhood, the owner of the antique business, Thomas Koenen, had asked appellant some months before "to keep an eye" on the yard where Koenen kept old chairs and dressers which he used for parts in preparing other furniture for sale. On the night of December 21, appellant went to bed at approximately 9:00 p. m. but was later awakened by noises and voices coming from all around his house. He looked out a window and saw two men standing and talking nearby, one of whom was urinating on his wall. He then looked out another window and saw what he believed to be three more men milling back and forth in the yard.

Appellant testified he became frightened and believed that the men were stealing

something. He found his pistol, left the house, and confronted two young men near the back wall, telling them he did not appreciate what they were doing on his wall. According to appellant, they acted "snooty" and walked away to the northeast across a nearby parking lot. Appellant then saw the other men in the yard. He asked them to come out and to drop what they were carrying. Appellant testified that two young men emerged, dropped a couple of chairs, and then walked on up the alley to the west, ignoring his orders to stop.

As the young men walked away, appellant fired a couple of warning shots straight up in the air. Appellant testified he then heard something like a rock whiz by him and felt the air rush by. When the men continued to walk away, he lowered the gun and fired at a height he thought was still over their heads, "but close enough so that they were certain that they were real bullets rather than a cap gun." One of the two men, Timothy Tylutki, age 19, was struck in the head and leg and died.

John Caid, the young man accompanying the victim, gave the following account of the incident which differs in some respects from appellant's version. Caid testified that on December 21, he, Tom Sloyan, Pat Brady and Tim Tylutki were at a party at a house which Caid and Sloyan rented with several other students. All but Sloyan had been drinking. In the course of the evening, they decided they needed more chairs. They walked to the antique store where one of them had seen some old chairs hanging on nails on a wall in the back yard. Pat Brady and Tom Sloyan were the men appellant first encountered. John Caid and Tim Tylutki were the people appellant saw carrying chairs in the yard area.

Caid testified that he and Tim took the chairs from the wall but could not see the condition of the chairs because of the darkness. When they got to the alley where there was some light they decided the chairs were not worth keeping so they left them and started off down the alley. Caid testified that during this time they had neither seen appellant nor heard him say anything to them. As they walked away, however, they heard a yell and a "crack". They then saw appellant standing in the yard and heard another shot. Caid testified that they kept on walking, but that as they walked Caid turned slightly, made a motion with his hand and went "swoosh". He said that neither he nor Tim threw a rock at appellant. He then heard a third shot and Tylutki fell to the ground. He heard one more shot and felt Tylutki's body jerk. Appellant was questioned at the scene, charged with manslaughter, tried and convicted.

Appellant presents six arguments on appeal. The first three relate to the trial court's refusal to allow his defense that the killing was justified under A.R.S. § 13–462(4) because he was attempting to apprehend a fleeing felon. In this regard, appellant contends the trial court erred in refusing (1) to give certain instructions dealing with the justifiable homicide defense; (2) to allow cross-examination of the victim's companions regarding their arrests for burglary; and (3) to allow appellant's counsel to argue the justifiable homicide defense in his opening statement.

The theory of appellant's proposed justifiable homicide defense was embodied in his requested instructions numbers 13 and 19. Instruction No. 13 which derives from dicta in *Viliborghi v. State*, 45 Ariz. 275, 43 P.2d 210 (1935), reads:

"After a burglary has been completed and the burglar is withdrawing from the scene of the crime, if the burglar attempts to flee from arrest a citizen may use such force as is reasonably necessary for the apprehension of the offender, even to the taking of life. And in all such cases the question of the necessity of the killing depends upon the reasonable apprehension and belief of the defendant, and not whether such apprehension and belief was justified by the facts as they actually existed."

Instruction No. 19 reflects the wording of A.R.S. § 13–462(4):

"Homicide is justifiable when committed by a person necessarily in attempting, by lawful ways and means, to apprehend a person for any felony committed."

The trial court refused these instructions for basically two reasons: (1) no felony was in fact committed because the yard was neither "enclosed" nor "commercial" within the meaning of A.R.S. § 13–302 which defines burglary; and (2) the court believed that the law set forth in *Viliborghi* had been modified by *State v. McIntyre*, 106 Ariz. 439, 477 P.2d 529 (1970).

Appellant argues that the court erred in rejecting the defense and the instructions because the justification of a homicide committed while attempting to apprehend a fleeing felon depends not on whether there has been a felony in fact but rather on whether appellant reasonably believed a felony was being committed. He points to the following language in *Viliborghi*:

". . . in all of such cases *the question of the necessity of the killing* depends upon the reasonable apprehension and belief of the defendant, and not whether such apprehension and belief was justified by the facts as they actually existed." (Emphasis added) 45 Ariz. at 291, 43 P.2d at 217.

██ This language, however, does not support appellant's contention. It explains the requirement that once a felony has been committed, the use of deadly force must be or appear to be reasonably necessary for the apprehension of the felon. It does not mean that the use of deadly force is justified upon a reasonable belief that a felony has been committed. The law has always been that the authority of a private person to make arrests is much more limited than the right of a police officer. 4 Wharton's Criminal Law and Procedure § 1602. While a police officer may arrest with impunity upon probable cause to believe a crime has been committed, a private person may arrest only where a felony has in fact been committed. A.R.S. § 13-1404. If no felony was committed, an arrest by a private person is illegal. Therefore, since a homicide is justified under A.R.S. § 13-462(4) only

where the arrest is attempted by "lawful ways and means", a private person is not authorized to shoot or kill another in an attempt to arrest merely on suspicion that a felony has been committed. *Commonwealth v. Chermansky*, 430 Pa. 170, 242 A.2d 237 (1968). In order to invoke the defense of justifiable homicide in apprehending a fleeing felon, the defendant at a minimum must show that: (1) the overt elements of a felony were in fact present and (2) the taking of life was (or appeared to be) reasonably necessary in order to apprehend the fleeing felon. Cf. *People v. Walker*, 32 Cal.App.3d 897, 108 Cal.Rptr. 548 (1973).

██ Here the trial court found as a matter of law that the elements of a burglary were not present and therefore appellant could not invoke the defense. We agree with the trial court. A.R.S. § 13–302(A) defines burglary, in part, as:

"A person entering . . . a fenced or otherwise enclosed commercial yard used for storing equipment or supplies, including but not limited to scrap metals, steel or construction materials, with intent to commit grand or petty theft, or any felony . . . ."

The trial court found that the yard appellant shared with the antique business was not "fenced" or "enclosed" within the meaning of the statute. Evidence. at trial indicated that the wall "just kind of tapered off" and that there were pathways leading out which were blocked in some places only by plywood boards to keep appellant's puppies from escaping. Appellant himself described the wall at one point as consisting of two bricks which he could just step over.

The general concept of burglary reflected in the statute is an unauthorized entry into an area protected against intrusion. A "commercial yard" is not within the burglary statute unless it is fully enclosed and its wall, fence, or other enclosing structure is erected mainly for the purpose of protecting property and not merely as a boundary or for aesthetic considerations. *State v.*

*Roadhs*, 71 Wash.2d 705, 430 P.2d 586 (1967). We thus hold that the trial court did not err in finding that a felony was not in fact committed and the defense of justifiable homicide under A.R.S. § 13–462(4) was therefore properly rejected.

■ We note, however, that we also agree with the trial court's second reason for rejecting the defense. We find, as did the trial court, that serious inroads have been made in the authority of private persons to use deadly force to effect an arrest and that the law no longer allows a private person to use deadly force to arrest for every felony. See e. g., *People v. Piorkowski*, 41 Cal.App.3d 324, 115 Cal.Rptr. 830 (1974); *Commonwealth v. Chermansky*, supra. In *State v. Copley*, 101 Ariz. 242, 418 P.2d 579 (1966) which involved the defense of justifiable homicide in resisting an attempt to commit a felony, A.R.S. § 13–462(1), our Supreme Court held that the felony must be one which reasonably creates a fear of great bodily injury. The same standard was applied in *State v. McIntyre*, supra, to justifiable homicide in defense of habitation against one who intends to commit a felony, A.R.S. § 13–462(2). The court stated:

> ". . . [I]t is our opinion that the statute does not give a person carte blanche to shoot another simply because that other person is committing an act which under the statutes might be considered a felony. Rather, it is necessary that the act 'reasonably creates a fear of great bodily injury.'" 106 Ariz. at 445, 477 P.2d at 535.

As the court explained in *Copley*, the statutes on justifiable homicide are a codification of the common law principles which developed at a time when all felonies were capital offenses. With the modern statutory expansion of the classes of felonies, the common law rule is no longer adequate. We find no reason to distinguish the defense of justifiable homicide in arresting a fleeing felon under A.R.S. § 13–462(4) from the defense in *Copley* and *McIntyre*, nor any rationale to support the justification of

a homicide committed while attempting to arrest a person guilty of bribing a livestock inspector, A.R.S. § 24–109(B); of breaking into a coin-operated vending machine, § 13–676; of a second offense of publicly displaying explicit sexual materials, § 13–537(C); or of stealing a horse or any neat or horned animal, § 13–663(A)(3).

■ In any event, since the trial court properly rejected the defense, appellant must also fail on arguments two and three. Where the evidence was irrelevant to any defense, the trial court did not err in refusing to allow appellant's counsel to specifically mention burglary charges when questioning the victim's companions as to whether they had been arrested for stealing the chairs, or in refusing to allow appellant's counsel to discuss in his opening statement the right of a private person to use deadly force in apprehending a fleeing felon.

The fourth and fifth issues presented by appellant involve the trial court's refusal to give certain requested instructions on the right of self-defense. The trial court gave an instruction (RAJI C.D. 3) covering self-defense which set forth three conditions that a defendant must meet to invoke the right of self-defense, i. e., (1) that defendant reasonably believed he was in immediate danger of great bodily injury or death, (2) that defendant acted solely because of this belief, and (3) the defendant used no more force than appeared reasonably necessary under the circumstances. Appellant requested additional instructions to the effect that he would be entitled to claim self-defense even though he did not retreat, and even though he was armed, as well as a general instruction in the statutory language of A.R.S. § 13–1207 which was similar to that given by the trial court.

■ We find no error in the trial court's refusal to give these instructions. The trial judge has the duty to instruct the jury upon the law relating the facts of the case and upon matters vital to a proper consideration of the evidence. *State v. Ev-*

*ans,* 109 Ariz. 491, 512 P.2d 1225 (1973). Where the instructions correctly and fairly state the law, however, it is not error for the trial court to refuse to single out a particular element of the case for special instruction. *State v. Taylor,* 109 Ariz. 267, 508 P.2d 731 (1973). See also *State v. Faafiti,* 54 Haw. 637, 513 P.2d 697 (1973) upholding the trial court's refusal to give specific instructions on retreat where the jury was fully charged on the issue of self-defense.

■ Appellant's final argument is that the judgment and sentence must be vacated because the state charged him on an open count of manslaughter under A.R.S. § 13–456 and § 13–457, as amended, and therefore he had no notice that he would be convicted of the more serious offense of voluntary manslaughter while armed with a gun or deadly weapon, A.R.S. § 13–457(B). Appellant cites as authority *State v. Castaneda,* 111 Ariz. 264, 528 P.2d 608 (1974). Assuming arguendo that appellant should have been charged under the specific manslaughter provision, the most *Castaneda* stands for is that where a defendant is charged in a manner such that it is unclear whether he will be held for the greater or lesser offense, he may only be punished within the limitations for the lesser offense. Here appellant's sentence was within the limitations for the lesser offense and will not be disturbed.

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.