760 P.2d 603

**STATE of Arizona, Appellee,**

v.

**Martin B. OLSEN, Appellant.**

**No. 1 CA–CR 11077.**

Court of Appeals of Arizona, Division 1, Department D.

April 21, 1988.

Review Denied Sept. 14, 1988.

**604**

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., and Vicki Gotkin Adler, Asst. Atty. Gen., Phoenix, for appellee.

Ely, Bettini and Ulman by Herbert L. Ely, Phoenix, for appellant.

## OPINION

FROEB, Presiding Judge.

Following a jury trial, appellant was convicted of negligent homicide, a dangerous offense. After a lengthy mitigation hearing, the trial court imposed the mandatory minimum sentence of four years imprisonment.

The facts at trial were essentially undisputed. The shooting death of the victim in this case occurred when appellant fired a .38 caliber revolver at two men leaving the parking lot of a bar in Apache Junction. The two men had just caused extensive property damage, frightening the bar patrons. When the men started throwing glasses around the bar, the patrons fled into the parking lot. Appellant decided that he would stop the men long enough for the police to arrive and removed a revolver from the glove compartment of his car. He testified that he used the weapon in 1971 to kill a rattlesnake, but since then he had not used the weapon for anything other than target practice with stationary objects. Appellant nevertheless attempted to shoot out one of the tires of the vehicle as it sped from the parking lot with the tires smoking and squealing.

As the vehicle passed by the front of a swimming pool located at a motel directly across the street from the bar, appellant fired the fatal shot. The bullet entered the left side of the victim's throat, as she lay suntanning in the motel pool area. The bullet lacerated both her jugular vein and left common carotid artery and transected her spinal cord. Although there was some dispute in the testimony as to whether the bullet ricocheted, the medical examiner testified that the bullet wound did not appear, in his experience, to be consistent with a ricochet. The victim died soon after being struck by the bullet.

On appeal, appellant raises a number of issues attacking the applicability and constitutionality of the mandatory sentencing scheme imposed upon conviction of a "dangerous" offense. He also argues that: (1) the court should have informed the jury of the effect of a finding of "dangerousness"; (2) the trial court erred in refusing to give an instruction regarding appellant's right to apprehend a fleeing felon; (3) the trial court erred in failing to grant a judgment of acquittal; and (4) the trial court erred in permitting admission of character evidence of the deceased.

### APPLICABILITY OF THE MANDATORY SENTENCE

Appellant argues that the legislature did not mean to apply the mandatory sentencing scheme in a case "such as this where *all* the ingredients of the crime constitute the only offense." (Emphasis by appel-

**605**

lant.) He argues that when the elements of a crime include the "enhancer," here the use of a gun, the mandatory sentencing provisions do not apply. Appellant apparently argues that the provisions of A.R.S. § 13–604(F) do not apply to a negligent homicide committed with a deadly weapon because the use of a deadly weapon constitutes the offense.

Initially, we note that appellant was convicted of a violation of A.R.S. § 13–1102, which states in part:

A person commits negligent homicide if with criminal negligence such person causes the death of another person.

"Criminal negligence" is defined in A.R.S. § 13–105(6)(d) as follows:

"Criminal negligence" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a *gross* deviation from the standard of care that a reasonable person would observe in the situation.

(Emphasis added.)

Negligent homicide is established by showing that a person failed to perceive a substantial and unjustifiable risk that his or her conduct would cause the death of another. *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750, *cert. denied*, 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). When a dangerous instrument or deadly weapon is involved in the homicide and "dangerousness" is alleged by the prosecutor, A.R.S. § 13–604(F) may come into play. The prosecutor alone decides whether to invoke the provisions of A.R.S. § 13–604, and his decision has been held not to violate separation of powers, due process or equal protection. *See State v. Buchholz*, 139 Ariz. 303, 308, 678 P.2d 488, 493 (App.1983) (that the prosecutor can alone decide whether to invoke A.R.S. § 13–604(H) does not violate either due process or equal protection); *see also State v. Cummings*, 148 Ariz. 588, 591, 716 P.2d 45, 48 (App.1985) (enhanced sentence pursuant to A.R.S. § 13–604(H) does not violate separation of powers). A.R.S. § 13–604(F) reads, in part:

[A] person ... who stands convicted of a class 4, 5 or 6 felony involving the intentional or knowing infliction of serious physical injury or *the use or exhibition of a deadly weapon* or dangerous instrument without having previously been convicted of any felony shall be sentenced to imprisonment for not less than the sentence and not more than twice the sentence authorized in § 13–701 for the offense for which the person currently stands convicted and shall not be eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis ... until not less than one-half of the sentence imposed by the court has been served.

(Emphasis added). When the state alleges a violation of A.R.S. § 13–604(F), a defendant convicted of a class 4 felony would be subject to at least a mandatory, minimum four-year term of imprisonment and would not be eligible for parole until not less than one-half the sentence imposed by the court had been served. A.R.S. §§ 13–604(F), 13–701(B)(3).

Appellant's suggestion that the mandatory sentencing scheme did not apply because the elements of the crime included the "enhancer" is not persuasive. Appellant confuses the elements of the crime with the mode of its commission. Reading A.R.S. § 13–1102, it is clear that the use of a gun or any other deadly weapon is not an element of the offense of negligent homicide and that the offense can be committed without the use of a deadly weapon. Furthermore, if the death of a victim is not caused by the use or exhibition of a deadly weapon or dangerous instrument *and* the death does not occur as the result of "intentional or knowing infliction of serious physical injury," but occurs as a result of a gross deviation from the standard of care, it is possible that the negligent homicide will not be a "dangerous" offense subject to the enhancement provisions of A.R.S. § 13–604(F).

It was not an "element" of the offense which caused the enhancement of appellant's sentence in this case, but the use of a deadly weapon—an enhancement factor adopted by the legislature. *State v. Hurley*, 154 Ariz. 124, 741 P.2d 257 (1987), leaves no doubt that the legislature may properly enhance the punishment for the commission of an offense in which a firearm is used.

In *Hurley*, the defendant was convicted by a jury of seven counts of armed robbery and one count of aggravated assault. The jury found all offenses dangerous because Hurley had used or exhibited a deadly weapon. *See* A.R.S. § 13-604(F), (G). Thereafter, a finding was made by the trial court that Hurley committed the robberies while on release from conviction of a felony offense, and Hurley's sentence was enhanced pursuant to A.R.S. § 13-604.02(A) (enhancing the sentence of one convicted of a dangerous felony, while on release from confinement for conviction of a prior felony). The supreme court held that the finding that Hurley was on release was not improper because it was made by the trial judge, as opposed to the jury. The court held that release status is not an element of the offense that must be proven beyond a reasonable doubt in front of a jury, but is a sentencing factor. The court stated that the legislature has the power to designate sentencing factors to be utilized in determining the appropriate sentence. *See Hurley*, 154 Ariz. at 130-31, 741 P.2d at 263-64.

■ Under the reasoning of *Hurley*, we hold that the use of a firearm may properly be considered in determining the appropriate sentence of one convicted of negligent homicide. *See also Cummings*, 148 Ariz. at 591, 716 P.2d at 48 (defining crimes and appropriate sanctions is a legislative function). We find no error in the use of dangerousness as a sentencing factor in this case. The state alleged A.R.S. § 13-604 with respect to this offense and the jury found appellant guilty of a "dangerous" offense. It was, therefore, incumbent upon the trial judge to impose the mandatory sentence because, as a matter of law, it applied to the facts of this case. *Cf. State*

*v. Sands*, 145 Ariz. 269, 277-78, 700 P.2d 1369, 1377-78 (App.1985) (trial court required by law to treat offense as repetitive under A.R.S. § 13-604(H)).

## THE CONSTITUTIONALITY OF THE MANDATORY SENTENCING STATUTE

In the introduction to this argument, appellant suggests that this court review the holding in *State v. Bly*, 127 Ariz. 370, 621 P.2d 279 (1980), which sustained mandatory sentences in Arizona. He states that this court should adopt the reasoning of the dissenting opinion in *State v. Garcia*, 141 Ariz. 97, 685 P.2d 734 (1984). *Bly* contains a lengthy discussion on the sentencing concepts of the criminal code adopted in 1978, but does not address the due process and equal protection arguments raised by appellant in this appeal. *Bly*, however, did reject double jeopardy and double punishment arguments directed at provisions of A.R.S. § 13-604. *Garcia*, on the other hand, does not deal with the mandatory sentencing provisions of A.R.S. § 13-604, but instead deals with A.R.S. § 13-1206. A.R.S. § 13-1206 required mandatory life imprisonment for a prisoner convicted of a dangerous or deadly assault. That statute stands in contrast to the legislative scheme at issue here. In addition, this court is bound by the decisions of the supreme court, and is not at liberty to review the holding in *Bly*. *See Rodriquez v. Salt River Valley Water Users' Ass'n*, 19 Ariz. App. 223, 506 P.2d 263 (1973) (privilege of modification of principles of law announced in state supreme court decisions does not extend to the court of appeals).

### A. DOUBLE JEOPARDY

Appellant argues that the mandatory sentencing scheme as applied in this case constitutes a violation of the double jeopardy provision prohibiting a state from punishing an individual twice for the same offense. Although appellant does not cite the code section which is claimed to be a constitutional violation, we assume that he is addressing only the provisions of A.R.S. § 13-604(F).

As noted above, the holding in *Bly* specifically rejects appellant's argument that enhanced punishment for a dangerous offense violates the double jeopardy and double punishment provisions of either the United States or Arizona constitutions. *See Bly*, 127 Ariz. at 371, 621 P.2d at 280 (A.R.S. § 13–604(G) used to enhance sentence for armed robbery). Although appellant argues that without the use of a gun in this case there was no crime, the substantive offense occurred as a result of appellant's negligence which caused the death of the victim. The manner in which the crime was accomplished adds nothing to the substantive offense. The fact that a deadly weapon was also involved enhanced the punishment. The enhancement provisions of A.R.S. § 13–604 do not constitute separate crimes or create elements of an offense. Appellant has been punished once for negligent homicide. The legislature may, without violating the due process clause, provide for a more severe punishment when this crime is committed with a deadly weapon. *See Bly*, 127 Ariz. at 373, 621 P.2d at 232; *cf. State v. Torrez*, 141 Ariz. 537, 687 P.2d 1292 (App.1984) (statutes authorizing harsher sentences for persistent offenders do not create a new, separate, distinct, independent or substantive offense).

**B. DOES THE MANDATORY SENTENCING PROVISION OF A.R.S. § 13–604(F) VIOLATE THE SEPARATION OF POWERS DOCTRINE OR CONSTITUTE A DENIAL OF EQUAL PROTECTION OR DUE PROCESS?**

Appellant next argues that leaving the allegation of the enhancement provisions of A.R.S. § 13–604 to the exclusive discretion of the prosecutor constitutes a violation of the separation of powers between the legislature and judiciary. He argues that *State v. Jones*, 142 Ariz. 302, 689 P.2d 561 (App. 1984), is directly on point. However, in the recent case of *State v. Prentiss*, Ariz. (App.1988) 2 CA–CR 87–0419 (filed Feb. 4, 1988), the court held that *Jones* was limited to situations in which a prosecuting attorney attempts to decide what the punishment for a defendant will be *after* a conviction.

The court noted that prosecutorial discretion to make pre-trial allegations that may limit a trial judge's discretion at sentencing does not violate constitutional provisions regarding separation of powers. *Prentiss*, Ariz.; 2 CA–CR 87–0419, slip op. at 2; *see also State v. Cummings*, 148 Ariz. at 588, 716 P.2d at 45 (A.R.S. § 13–604(H) does not violate the principle of separation of powers).

In addition, appellant argues that the manner in which the prosecutor alleged "dangerousness" in this case violated due process and equal protection provisions of the United States and Arizona constitutions. He argues that the reasons for the prosecutor's actions were never explained and that the only apparent reason for the prosecutor's allegation of "dangerousness" was the use of a gun. Appellant then notes that this was the first offense that he had ever been charged with, that he was repentant, devastated by the course of events, and that his "intent to disable the felons involved was exemplary." Appellant concludes that he was improperly singled out for the harsh penalty of a mandatory sentence when there was no rational basis to require such a sentence.

As noted in *State v. Buchholz*, 139 Ariz. at 303, 678 P.2d at 488, the fact that a prosecutor alone can decide whether to invoke the mandatory sentencing provisions of A.R.S. § 13–604 does not violate either due process or equal protection. *Buchholz* rejects both the arguments presented by appellant. That decision is dispositive on the issues raised.

**C. THE SENTENCE IMPOSED CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT**

Appellant also argues that under the test set forth in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the sentence imposed constitutes cruel and unusual punishment. The factors set forth in *Solem* to determine whether a punishment constitutes cruel and unusual punishment are: (1) the gravi-

ty of the offense; (2) the harshness of the penalty; (3) the sentence imposed on others in the jurisdiction for similar crimes; and (4) the sentence imposed on similarly situated defendants in other jurisdictions. Under this four-part analysis, the state argues this court should conclude that the mitigated, mandatory four-year sentence imposed herein is not cruel and unusual punishment. We hold the state is correct.

As noted earlier, the mandatory minimum sentence for this offense is four years imprisonment. Appellant is eligible for parole in two years. In *State v. Parker*, 128 Ariz. 107, 624 P.2d 304 (App.1980), *aff'd in part*, 128 Ariz. 97, 624 P.2d 294 (1981), this court not only upheld the prosecutor's discretion to allege "dangerousness," but concluded that the mandatory sentence imposed on the defendant following his conviction for shooting a six-month-old baby did not constitute cruel and unusual punishment. Although the defendant never intended to kill the young child when he shot at the door of an apartment, the court nevertheless upheld a mandatory four-year sentence of imprisonment. The court held that the imposition of the mandatory sentence on the defendant, convicted of negligent homicide, was a proper exercise of the legislature's prerogative to determine the length of sentences. *See Parker*, 128 Ariz. at 110, 624 P.2d at 307. We find that appellant's sentence is consistent with those imposed on similarly situated defendants. In so holding, we note that, under the present sentencing scheme, the sentence is not intended to fit the circumstances of the individual defendant. The sentence under the statute is retributive in nature. *See Bly*, 127 Ariz. at 372, 621 P.2d at 282.

In considering the gravity of this offense as against the strictness of the penalty, together with appellant's eligibility for parole within two years of confinement, we conclude that the sentence imposed did not constitute cruel and unusual punishment. Arizona Supreme Court decisions have recognized that offenses involving dangerous instruments or weapons have consistently been treated more severely than offenses considered as nondangerous. *See State v.*

*McNair*, 141 Ariz. 475, 484, 687 P.2d 1230, 1239 (1984).

### THE JURY SHOULD HAVE BEEN INFORMED OF THE EFFECT OF A "DANGEROUS" FINDING ON THE SENTENCE

Appellant argues that in the event this court sustains the mandatory sentencing scheme as applied in this case, "then to ameliorate the harshness of the penalty and to make sense of the effect of this law, the jury should at least be informed of the consequences of its decision." Appellant suggests that without an instruction advising the jury of the consequences of a finding of dangerousness, their decision is ministerial and inevitable.

In *State v. Koch*, 138 Ariz. 99, 673 P.2d 297 (1983), the court stated that jury instructions should not advise the jury concerning the potential punishment that a defendant faces upon conviction. The court stated:

In a criminal trial in Arizona, the exclusive function of the jury is to determine whether the defendant is guilty or not guilty. The trial court determines matters of punishment. "A defendant is entitled to a fair trial and to a verdict of a jury upon the evidence without consideration of the punishment inflicted." *State v. Burnetts*, 80 Ariz. 208, 212, 295 P.2d 377, 379 (1956).

*Koch*, 138 Ariz. at 105, 673 P.2d at 303.

■ Although jurors may be influenced by the punishment that might be meted out as a result of their verdict, decisions in Arizona have long held that such matters are "none of their concern." *State v. Burnetts*, 80 Ariz. at 212, 295 P.2d at 379. To allow the jury to consider the possible punishment would be to allow them to base their decision on sympathy, passion or prejudice. Such a basis for a verdict would clearly be improper. *See State v. Tims*, 143 Ariz. 196, 198, 693 P.2d 333 (1985). (It would have been improper for the trial judge to allow defense counsel to inform the jury regarding the mandatory punishment provisions of A.R.S. § 13–1206).

The court did not err in refusing to permit defense counsel in this case to advise the jury regarding the consequences of a finding of "dangerousness."

## REFUSAL OF INSTRUCTION ON RIGHT OF INDIVIDUAL TO APPREHEND A FLEEING FELON WITH DEADLY FORCE

Appellant requested a jury instruction which would have advised the jurors that he was justified in using deadly physical force to apprehend the miscreants so long as he reasonably believed them to be felons and so long as he reasonably believed that the force was necessary to secure their detention. The trial court refused to give the instruction based on *State v. Barr*, 115 Ariz. 346, 565 P.2d 526 (App.1977). Appellant argues that the court should not have relied upon *Barr* because it interpreted a prior provision of the Arizona Criminal Code, which was superseded by the 1978 code.

A.R.S. § 13–410 limits the use or threatened use of deadly physical force by one to effect the arrest or prevent the escape of another to those situations in which a reasonable person believes the other: (1) is resisting the discharge of a legal duty with deadly physical force or with apparent capacity to use deadly physical force; or (2) has escaped from lawful confinement; or (3) is fleeing from justice or resisting arrest with physical force. In reviewing the prerequisites to the justification of the use of deadly force set out in A.R.S. § 13–410, it is clear that none of those provisions were supported by the facts in this case. In addition, the instruction offered was not an accurate statement of the elements set out in A.R.S. § 13–410.

The court in *Barr* adopted a limited construction of a statute, former A.R.S. § 13–462(4), which on its face was much broader than the present statute. That statute provided that homicide is justifiable when committed by a person:

[n]ecessarily in attempting, by lawful ways and means, to apprehend a person for any felony committed, or in lawfully suppressing a riot or in lawfully keeping and preserving the peace.

The court in *Barr* noted that with the modern statutory expansion of the classes of felonies, the common law rule permitting the use of deadly force against felons was no longer adequate. *Barr*, 115 Ariz. at 350, 565 P.2d at 530. The court found no reason to distinguish the defense of justifiable homicide in arresting a fleeing felon from a number of other uses of deadly force which are simply inappropriate. The court restricted the use of deadly force to felonies which reasonably create a fear of great bodily injury. *Barr*, 115 Ariz. at 350, 565 P.2d at 530. That *Barr* is still valid is evidenced by the recent United States Supreme Court decision in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (fourth amendment prohibits use of deadly force by police officers to stop fleeing felon unless it is necessary to prevent a serious physical injury to the officer or community). In light of *Garner*, *Barr* and A.R.S. § 13–410, we conclude that appellant was not justified in using deadly physical force to stop the fleeing felons who had engaged in extensive property damage to the bar, but who posed no threat of serious physical injury to the bar patrons. The trial court did not err in refusing to instruct the jury on the appellant's right to use deadly physical force.

## DENIAL OF JUDGMENT OF ACQUITTAL

Appellant argues that he was entitled to a judgment of acquittal pursuant to rule 20, Arizona Rules of Criminal Procedure. He claims there was no substantial evidence in the record to sustain his conviction for negligent homicide.

In considering a motion for judgment of acquittal, the trial court should deny the motion when the evidence raises a question of fact for the jury and, if believed, would be sufficient to sustain a conviction. It is error to grant the motion when the evidence is such that reasonable minds could differ on the inferences to be drawn therefrom. *State v. Just*, 138 Ariz. 534, 675 P.2d 1353 (App.1983).

In this case, although appellant suggests that his actions were reasonable, that was clearly a question of fact to be decided by the jury. It was up to the jury to decide whether appellant's act was a gross deviation from the standard of care required of a reasonable person under the circumstances. In this case, the evidence demonstrated that the alleged felons had already fled from the bar and posed no threat of continuing harm to either the patrons of the bar or any of its employees. Nevertheless, appellant removed a revolver from his automobile, which he had not used on a regular basis in over fourteen years, and proceeded to attempt to shoot the tire of a rapidly moving vehicle. He did so at a time when the vehicle was between appellant and a motel which had a pool area. It was up to the trier-of-fact to determine whether firing a revolver in those circumstances was the act of a reasonable person or constituted a gross deviation from a reasonable standard of conduct.

Although appellant suggests that the victim's death was a bizarre accident, that the bullet simply ricocheted off the street before hitting the victim, the medical testimony indicated that the bullet entrance wound was not consistent with a ricochet. Furthermore, police officers testified that they were unable to find any physical evidence of such an occurrence.

There was substantial evidence supporting the alleged negligent homicide with which appellant was charged. It was proper to submit the case to the jury.

IMPROPER CHARACTER EVIDENCE

During trial, the victim's husband was shown an exhibit by the state and asked to identify it. It was a picture of his wife, the victim. When asked if he could identify the photo, the husband simply answered, "That's my angel." On appeal, appellant suggests that the state, by the husband's answer to that question, placed evidence of the victim's character into evidence. No objection was raised to the answer at trial.

Failure to object to an offer of evidence waives any complaint on appeal absent fundamental error. *State v. Vickers*, 129 Ariz. 506, 633 P.2d 315 (1981). An error is fundamental only when it goes to the foundation of the case or takes from the defendant a right essential to his defense. *State v. Burton*, 144 Ariz. 248, 697 P.2d 331 (1985). We do not find that there was fundamental error created by the husband's response to this question.

Judgment and sentence affirmed.

GRANT and CONTRERAS, JJ., concur.