1998-NMCA-019

954 P.2d 79

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Aaron Delvonte JOHNSON,
Defendant–Appellant.**

No. 17200.

Court of Appeals of New Mexico.

Nov. 6, 1997.

Certiorari Denied Jan. 6, 1998.

Tom Udall, Attorney General, Steven S. Suttle, Assistant Attorney General, Albuquerque, for Plaintiff–Appellee.

Rita LaLumia, Santa Fe, for Defendant–Appellant.

**OPINION**

BOSSON, Judge.

1. This case involves the fatal shooting of Abel Gallegos, who broke into a vehicle, stole a car stereo, and was in the process of driving away when he was shot and killed by Aaron Johnson, a friend of the owner of the vehicle. Johnson was refused a jury instruction on the defense of justifiable homicide when stopping a fleeing felon, and he appeals on that sole issue. We affirm the ruling of the district court. We hold as an issue of first impression under New Mexico law that deadly force by a private citizen in apprehending a suspected fleeing felon is subject to standards of reasonableness that were not present in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

2. On April 20, 1995, Steve Haddox and Aaron Johnson, along with Matt Neel and others, were at a party at an apartment complex located in a residential area of Albuquerque. At around 10:30 or 11:30 p.m. a friend told Haddox and Johnson that someone was breaking into Neel's Suzuki automobile. Haddox, Johnson, and Neel went to the parking lot of the apartment complex and saw someone—later identified as Abel Gallegos—run from the Suzuki, get into a waiting car, and start to speed off. The window of the Suzuki had been broken, and the car stereo was missing. Haddox and Johnson then each produced handguns and fired eleven shots at the car, fatally wounding Abel Gallegos. Haddox and Johnson returned to the party, and Haddox told people there that he may have hit someone. Two officers of the Albuquerque Police Department were nearby, heard shots, and saw the Gallegos car speeding away with its lights off. The officers stopped the car and found Gallegos shot through the heart. Another bullet was also found lodged in the car. No weapons were found in the car or on any of the occupants. The officers questioned Haddox and Johnson, who admitted to the shooting and gave their weapons to the police. Neither Haddox nor Johnson asserted that he had acted in self-defense. The bullet that killed Gallegos was fired from Johnson's gun,

and the bullet found lodged in the car was fired from Haddox's gun.

3. Defendants were charged with second degree murder and various other crimes in indictments returned by the Bernalillo County Grand Jury. They each entered pleas of guilty to the lesser included offense of involuntary manslaughter, NMSA 1978, § 30–2–3(B) (1994), pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Each reserved the right to appeal the district court's refusal to give a justifiable homicide instruction, which would have permitted the jury to find that the death of Abel Gallegos was justified if Defendants were attempting to make a citizen's arrest of a fleeing felon. While on appeal, but after oral argument, Haddox dismissed his appeal, and therefore this opinion specifically applies only to Defendant Johnson.

*ANALYSIS*

4. New Mexico's statute on justifiable homicide in a case of a citizen's arrest has remained essentially unchanged since Territorial times. *See* Kearney Code, art. II, § 1 (1846); NMSA 1915, § 1469 (1907); NMSA 1915, § 1471 (1897); NMSA 1941, § 41–2413 (1929); NMSA 1953, § 40A–2–8 (1963). This statute, currently at NMSA 1978, Section 30–2–7(C) (1963) (emphasis added), provides that homicide by a private citizen is justifiable "when *necessarily committed* in attempting, *by lawful ways and means*, to apprehend any person for any felony committed in his presence, or in lawfully suppressing any riot, or in necessarily and lawfully keeping and preserving the peace."

5. Defendant interprets this subsection to mean that a citizen attempting an arrest may use that amount of force reasonably believed necessary to apprehend the felon. Thus, under this analysis, a citizen may use deadly force and even kill a suspected felon to prevent him from fleeing, regardless of whether the suspect is armed or considered dangerous, or whether the arresting citizen is placed in fear of bodily harm. Indeed, this interpretation of Section 30–2–7(C) would allow a citizen to use deadly force no matter how passive or nonviolent the suspected felony might be (e.g., embezzlement, forgery, tax or welfare fraud), and regardless of other external circumstances like time and place (e.g., populated area when people are out and about). Simply put, Defendant would be guided by one measure only: any means necessary to prevent the suspect from fleeing.

6. To support his interpretation of the statute, Johnson argues that case law in New Mexico applies the justifiable homicide defense to the apprehension of all fleeing felons. Relying on *Alaniz v. Funk*, 69 N.M. 164, 167, 364 P.2d 1033, 1034–35 (1961), Defendant claims that a private citizen or a police officer may use deadly force to stop a fleeing felon regardless of whether the felony is considered serious or not.

7. *Alaniz* was a wrongful death action against an acting deputy sheriff who attempted to prevent the escape of a man accused of having stolen rifles. The deputy fired shots at the getaway vehicle, killing the driver of the car. *Id.* at 165, 364 P.2d at 1033. Despite the nonviolent nature of the crime, and the absence of a concrete threat to the officer's safety, the court found the deputy's use of force to be reasonable as a matter of law under statutory language similar to that at hand, which made homicide justifiable " '[w]hen necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed[.]' " *Id.* at 166, 364 P.2d at 1034 (quoting NMSA 1953, § 40–24–13). However, the facts in *Alaniz* did not involve a private citizen's use of deadly force. *Id.* at 167–68, 364 P.2d at 1035–36. The holding in *Alaniz* applies only to the use of deadly force by a law enforcement officer and, therefore, is not controlling in the current case.

8. Moreover, *Alaniz* today would be limited by the holding of the United States Supreme Court in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *Garner* involved a lawsuit filed under 42 U.S.C. § 1983 by the family of an unarmed fleeing house burglar, who was killed by a police officer attempting to stop him. *Garner*, 471 U.S. at 3–4, 105 S.Ct. at 1697. Finding the killing of an unarmed fleeing suspect unreasonable under the Fourth Amendment, the Court stated that "it is plain that reasonableness depends on not only when a seizure

is made, but also how it is carried out." *Id.* at 8, 105 S.Ct. at 1699. The *Garner* Court emphasized that the use of deadly force under such circumstances "frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." *Id.* at 9, 105 S.Ct. at 1700. The Court observed that although the apprehension of criminals was a goal of the state, the Court was "not convinced that the use of deadly force is a sufficiently productive means of accomplishing [that goal] to justify the killing of nonviolent suspects." *Id.* at 10, 105 S.Ct. at 1700. Thus, the Court required that officers have probable cause to believe that they or others are threatened with serious harm before the use of deadly force could be constitutionally reasonable under the Fourth Amendment.

9. In *Garner,* as in the current case, the defendants argued that the common-law rule "allowed the use of whatever force was necessary to effect the arrest of a fleeing felon." *Id.* at 12, 105 S.Ct. at 1701. The Court · rejected that argument, observing that, historically, many crimes that are now felonies were only misdemeanors, and that in the past most felonies were punishable by death. *Id.* at 14, 105 S.Ct. at 1702–03. Thus, the common-law felony rule applied to the most severe class of crimes, most of which by definition would pose a threat of harm to an arresting officer or others (e.g., murder, suicide, manslaughter, burglary, arson, robbery, rape, larceny, sodomy, and mayhem). *See* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 2.1(b), at 90–91 (1986) [hereinafter LaFave]. The Court also declared:

> There is an additional reason why the common-law rule cannot be directly translated to the present day. The common-law rule developed at a time when weapons were rudimentary. Deadly force could be inflicted almost solely in a hand-to-hand struggle during which, necessarily, the safety of the arresting officer was at risk.

*Garner,* 471 U.S. at 14–15, 105 S.Ct. at 1703. This is clearly not the case today, and as the *Garner* Court noted, "changes in the legal and technological context mean the rule is distorted almost beyond recognition when literally applied." *Id.* at 15, 105 S.Ct. at 1703.

10. Thus, the classification of a crime as a misdemeanor or a felony is far different today than in Territorial times, and New Mexico law on warrantless arrests by police officers has reflected this change. While the common-law misdemeanor arrest rule has always restricted warrantless public arrests to offenses committed in the presence of the arresting officer, *State v. Luna,* 93 N.M. 773, 777–78, 606 P.2d 183, 187–88 (1980), historically, there was no such restriction on an officer's authority to make a warrantless public arrest for a felony. Recently, however, our Supreme Court interpreted Article II, Section 10 of the New Mexico Constitution so that warrantless public arrests by police officers for felonies must be supported by both probable cause and exigent circumstances, thus providing additional restrictions and safeguards on the police in apprehending suspects under our New Mexico Constitution. *See Campos v. State,* 117 N.M. 155, 157–59, 870 P.2d 117, 119–21 (1994). As the New Mexico Supreme Court recently reaffirmed in *State v. Gomez,* 1997 NMSC 006, ¶ 42, 122 N.M. 777, 932 P.2d 1, the additional requirement insures an objectively reasonable procedure to protect the rights of individuals who are suspected of a crime, and we believe our Supreme Court would have the citizen-arrest rule reflect that same policy of objective reasonableness.

11. After the United States Supreme Court's ruling in *Garner,* the New Mexico legislature amended NMSA 1978, Section 30–2–6 (1989), thereby limiting the use of deadly force by law enforcement officers. Apparently tracking the *Garner* opinion, the legislature added subsection 30–2–6(B) which states:

> For the purposes of this section, homicide is necessarily committed when a public officer or public employee has probable cause to believe he or another is threatened with serious harm or deadly force while performing those lawful duties described in this section. Whenever feasible, a public officer or employee should give warning prior to using deadly force.

12. Thus, the legislature has now limited the use of deadly force by police officers, effectively mooting the opinion in *Alaniz*. It is now clear that under today's standards of "necessarily committed ... by lawful ways and means," Defendant's actions, if performed by a police officer, would never be tolerated. The remaining question is whether private citizens are permitted to use lethal force when the police, despite their greater training and expertise, cannot.

13. There is nothing in New Mexico case law that would support such an anomaly. To the contrary, New Mexico case law analyzing analogous situations applies a standard of objective reasonableness. New Mexico has applied the same reasonableness standard to the use of force permitted in a citizen's arrest as that permitted in self-defense: "the privilege of citizen's arrest, as well as self-defense, is limited to the use of reasonable force." *Downs v. Garay*, 106 N.M. 321, 324, 742 P.2d 533, 536 (Ct.App. 1987). In the context of deadly force, "reasonable" means that the actor be in fear of proportionate harm or force against him. LaFave, *supra*, § 5.7, at 649 (stating it is never reasonable to use deadly force against non-deadly attack). This Court recently affirmed a trial court's refusal to give a jury instruction on the use of deadly force in defense of others because "there was no evidence tending to satisfy the reasonableness prong of the deadly force test." *State v. Duarte*, 1996 NMCA 038, ¶ 8, 121 N.M. 553, 915 P.2d 309. In *Duarte*, there was evidence that the defendant stabbed the victim during a fight arising out of an argument. *Id.* at ¶ 1. The court observed that "[w]hether or not Defendant actually feared that the victim would inflict death or great bodily harm upon [Defendant's girlfriend], he was not entitled to the deadly force instruction unless there was some evidence that his fear was reasonable." *Id.* at ¶ 8. Given the lack of objective basis to fear harm from deadly force, the court ruled that the resort to deadly force was unreasonable as a matter of law. *Id.* at ¶ 10. This puts the use of deadly force by a private citizen in the protection of others on a parallel with the use of deadly force by law enforcement officers. The citizen is not given *more* latitude to use deadly force as De-

fendant would suggest for himself in this case.

14. Similarly, in *State v. Abeyta*, 120 N.M. 233, 240, 901 P.2d 164, 171 (1995) (quoting Leo M. Romero, *Sufficiency of Provocation for Voluntary Manslaughter in New Mexico: Problems in Theory and Practice*, 12 N.M.L.Rev. 747, 770 (1982)), our Supreme Court wrote that " 'the reasonableness of the defendant's conduct in killing' " is the key factor that makes a homicide justifiable. The Court went on to explain that "[s]elf-defense is only a justification for a killing, and thus a lawful act, if all the elements necessary for self-defense are met. One requirement of self-defense is that the force used must be reasonable in relation to the threat." *Id.* at 241, 901 P.2d at 172. If excessive force is exerted, the entire action becomes unlawful. *Id.*

15. More recently, in *State v. Johnson*, 1996 NMSC 075, ¶ 18, 122 N.M. 696, 930 P.2d 1148, our Supreme Court held that to support an instruction on the defense of citizen's arrest to a criminal prosecution, "a defendant must produce evidence showing facts and circumstances within the defendant's personal knowledge (1) that would induce an objectively-reasonable person to believe ... (4) that the defendant acted with reasonable force under the circumstances." The Court stressed it was adopting "a requirement that includes the objective-person standard in order to ensure good-faith, objectively-reasonable behavior." *Id.* at ¶ 18 n. 3. Additionally, the Court stated categorically that such a standard was not designed to protect "vigilantism, which we define as unreasonable self-help action by citizens that tends to disrupt the administration of the criminal justice system." *Id.* at ¶ 18. In discussing NMSA 1978, Section 30–16–23 (1965), an analogous statute authorizing a merchant's detention of shoplifters, the Court also noted that such a detention is lawful "if based upon probable cause and *reasonable behavior.*" *Johnson*, 1996 NMSC 075, ¶ 15, 122 N.M. 696, 930 P.2d 1148 (emphasis added) (citing § 30–16–23).

16. Defendant claims that under *Alaniz*, 69 N.M. 164, 364 P.2d 1033, and

*Johnson,* 1996 NMSC 075, 122 N.M. 696, 930 P.2d 1148, the reasonableness of his actions in using lethal force is always a question for the jury, regardless of the circumstances. We disagree. We agree that reasonableness in the use of force is generally a matter for the jury. But we do not read either *Alaniz* or *Johnson* as saying that reasonable force is *always* a jury question. *See Alaniz,* 69 N.M. at 167, 364 P.2d at 1035 (holding only that reasonableness in the use of force is "generally" a matter for the jury). Although the *Johnson* Court held under the facts of that case that the trial court's failure to issue a jury instruction was reversible error, *Johnson* also required that a defendant justify this instruction with evidence that he acted reasonably under the circumstances. 1996 NMSC 075, ¶ 18 n. 3, 122 N.M. 696, 930 P.2d 1148. The Court also adopted an "objective-person standard in order to ensure good-faith, objectively-reasonable behavior" consistent with the Restatement (Second) of Torts that a citizen is not privileged to use excessive force in effecting a citizen's arrest. *Id.* at ¶ 18 n. 3 (citing Restatement (Second) of Torts § 132 (1965)).[1]

17. In our view, Johnson's position on the unfettered use of force stands alone, unaided by any New Mexico case and unpersuasive in the face of the strong public policy announced by both our legislature and our Supreme Court in current statutes and opinions. Defendant is forced to resort to the bare, unadorned wording of Section 30–2–7(C) which, we acknowledge, having first been authored many years ago, might well have permitted a Haddox or a Johnson of the last century to take the law into his own hands and use force in whatever degree to stop a suspected felon from fleeing.

18. Defendant argues that the absence of a definition of "necessarily committed ... by lawful ways and means" in Section 30–2–7(C) should be interpreted as an expression of legislative intent that private citizens are free to use greater force than law enforcement officers. Defendant contends that the meaning of the statute is clear and requires no

additional explanation or interpretation. *See State v. Couch,* 52 N.M. 127, 144, 193 P.2d 405, 415 (1946).

■ 19. The New Mexico Supreme Court has urged caution in the application of the plain meaning rule. *See State ex rel. Helman v. Gallegos,* 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). Accordingly, when the literal language of the statute leads to an absurd result, the court may construe a statute to avoid such a result. *See id.* at 352, 871 P.2d at 1358; *Chavez v. Mountain States Constructors,* 1996 NMSC 070, ¶ 24, 122 N.M. 579, 929 N.M. 971 (construing literal language in harmony with the entire statute to avoid an absurd result).

20. In the current case, the term "necessarily committed ... by lawful ways and means" is not being read into Section 30–2–7(C). It is already there. We are guided by the legislature's definition of the term "necessarily committed ... by lawful ways and means" in Section 30–2–6(B), a companion statute. *See State v. Rue,* 72 N.M. 212, 216, 382 P.2d 697, 700 (1963) (when two statutes enacted by the legislature cover the same subject matter, one of them in general terms and the other in a more detailed way, the two should be harmonized and construed together); *see also Pueblo of Santa Ana v. Kelly,* 932 F.Supp. 1284, 1291 (D.N.M.1996) (seemingly ambiguous provision in isolation is often clarified by the remainder of the statutory scheme either because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces substantive effect that is compatible with the rest of the law), *aff'd by* 104 F.3d 1546 (10th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 45, 139 L.Ed.2d 11 (1997). The need for uniformity becomes more imperative when the same word or term is used in different statutory sections that are similar in purpose and content. 2B Norman J. Singer, *Statutes and Statutory Construction,* § 51.02, at 122 (5th ed.1992).

---

1. Comment c to § 132 lists the following factors to be considered in determining whether force is excessive: (1) known character of the offender, (2) nature of the offense with which offender is charged, and (3) the chance of the offender's escape or rescue unless such force is employed. Restatement (Second) of Torts § 132 cmt. c (1965).

21. Such an interpretation of the phrase is also supported by the Committee Commentary to the Uniform Jury Instruction on the defense of justifiable homicide by a citizen:

> Section 30–2–7C NMSA 1978 contains a justifiable homicide provision for one who, on his own initiative, kills.a fleeing felon or kills to suppress a riot or to keep and preserve the peace. The committee was of the opinion that, not only was the defense rarely available, it had an uncertain common-law basis.

UJI 14–5174, NMRA 1997, Committee Commentary. Also, as we have previously discussed, we are not unmindful of the fact that at almost every opportunity our appellate courts have interpreted the law in similar situations to require an underlying standard of objective reasonableness as a predicate to the use of lethal force. In our view, this is what the legislature contemplated, at a minimum, when it qualified "necessarily committed" by the phrase "lawful ways and means." While we do not need to decide whether the phrase encompasses the entire definition of "necessarily committed ... by lawful ways and means" set forth in Section 30–2–6(B), it does include the notion of proportionality precipitated by an apprehension of death or serious bodily harm which is part of objective reasonableness and which, in turn, makes the force "lawful" under Section 30–2–7(C).

22. Defendant argues that because the legislature amended Section 30–2–6 to include a definition of "necessarily committed ... by lawful ways and means," we should use the process of negative inference to reason that the absence of a definition in Section 30–2–7(C) was intentional. *See State v. Lucero*, 114 N.M. 460, 462, 840 P.2d 607, 609 (Ct.App.1992). Thus, Defendant contends, the legislature intended the phrases "necessarily committed" and "by lawful ways and means" to permit whatever is necessary mechanically to apprehend a fleeing felony suspect. Such an argument renders the phrase "by lawful ways and means" superfluous. We have always rejected an interpretation of a statute that would make parts of it mere surplusage or meaningless. *See Montoya v. Mentor Corp.*, 1996 NMCA 067, ¶ 19, 122

N.M. 2, 919 P.2d 410. It is this Court's role to construe ambiguous language and to give it sensible construction. *See Bustamante v. De Baca,* 119 N.M. 739, 742, 895 P.2d 261, 264 (Ct.App.1995); *see also* Singer, *supra,* § 51.03, at 140–41 ("[I]n construing an ambiguous enactment it is held proper to consider ... acts passed at prior and subsequent sessions."). Only Section 30–2–7(C) qualifies permissive use of force by the condition of "lawful ways and means"; Section 30–2–6 applying to law enforcement officers does not. It is simply irrational, as well as counter-intuitive, to conclude that the legislature could have used this kind of language to signal a wider latitude for private citizens in the use of deadly force than for law enforcement personnel.

## OTHER STATES

23. New Mexico surely does not stand alone in narrowly confining the use of force to stop a fleeing felon by lawful ways and means. Case law from Arizona supports the view that the use of lethal force in attempting a citizen's arrest should he restricted to felonies that reasonably create a fear of great bodily injury. *See, e.g., State v. Olsen,* 157 Ariz. 603, 760 P.2d 603, 609 (Ariz.Ct.App. 1988); *State v. Barr,* 115 Ariz. 346, 565 P.2d 526, 530 (Ariz.Ct.App.1977). In *Barr,* the Arizona Court of Appeals observed that "serious inroads have been made in the authority of private persons to use deadly force to effect an arrest and that the law no longer allows a private person to use deadly force to arrest for every felony." 565 P.2d at 530. At the time of the *Barr* decision, the relevant Arizona statute, similar to New Mexico's, authorized lethal force " 'when committed by a person necessarily in attempting, by lawful ways and means, to apprehend a person for any felony committed.' " *Id.* at 529 (quoting former A.R.S. § 13–462(4)). In that case, the defendant fatally shot a teenager stealing a chair, and the court of appeals affirmed the trial court's refusal to instruct the jury on the defense of justifiable homicide. *Barr,* 565 P.2d at 530–31.

24. In the more recent case of *Olsen,* 760 P.2d at 609, the Arizona Court of Appeals again upheld the trial court's refusal to in-

struct the jury on the defense of justifiable homicide, noting that the decision of the *Barr* court was strengthened by the United States Supreme Court's decision in *Garner*. In *Olsen*, the defendant shot at the tires of a car speeding out of a bar parking lot after its occupants had caused extensive property damage to the bar. *Id.*, 760 P.2d at 604. One of the bullets hit and killed a woman suntanning at a motel pool across the street. *Id.* Such circumstances dramatically illustrate the dangers of authorizing private citizens to use deadly force in situations where police officers would be restrained by principles of reasonableness.

25. Additionally, in the recent case of *Prayor v. State*, 217 Ga.App. 56, 456 S.E.2d 664, 666 (1995), the Court of Appeals of Georgia held that deadly force is limited to self-defense or situations in which it is necessary to prevent a forcible felony. The Ohio Court of Appeals in *State v. Pecora*, 87 Ohio App.3d 687, 622 N.E.2d 1142, 1144 (1993), held that the use of deadly force was prohibited unless it is necessary to prevent escape and there is probable cause to believe the suspect poses a significant threat of death or physical injury to the arresting person or others. The *Pecora* court stressed that the rights of citizens are no greater than those of police officers. *Id.* In California, the use of deadly force by private citizens has been limited to crimes that were felonies at common law, such as nighttime burglaries of residences. *People v. Martin*, 168 Cal. App.3d 1111, 214 Cal.Rptr. 873, 881 (1985). And the Supreme Judicial Court of Massachusetts has adopted the Model Penal Code, Section 3.07, which imposes on private citizens the standards of force applicable to peace officers when making an arrest. *Commonwealth v. Klein*, 372 Mass. 823, 363 N.E.2d 1313, 1318–19 (1977) (citing Model Penal Code § 3.07 (Proposed Official Draft 1962)).

26. Notwithstanding these authorities from other jurisdictions, Johnson argues that we should be persuaded by *State v. Cooney*, 320 S.C. 107, 463 S.E.2d 597, 598–99 (1995), in which the Supreme Court of South Carolina held that the owners of a plumbing supply store were entitled to a jury instruc-tion on justifiable homicide as a defense to murder charges. The store owners found their stolen property hidden near their business and waited for the burglar to return. *Id.* The store owners shot and killed the burglar in an attempt to apprehend him. *Id.* The trial judge refused to give the requested jury instruction, citing *Garner*, 471 U.S. 1, 105 S.Ct. 1694. *Cooney*, 463 S.E.2d at 598. The South Carolina Supreme Court reversed, finding Gamer inapplicable to seizures by private persons which do not implicate constitutional principles of state action. *Id.* at 599–600.

■ 27. Although we agree that the current case is not based on the Fourth Amendment, we are unpersuaded by Defendant's reference to judicial decisions of South Carolina. We find the public policy informing the reasoning of the Supreme Court in *Garner* to be highly relevant to the current facts. Whether the individual pursuing an unarmed felon is a police officer or a person attempting to make a citizen's arrest, we adhere to the policy that "[i]t is not better that all felony suspects die than that they escape." *Garner*, 471 U.S. at 11, 105 S.Ct. at 1701. Like the United States Supreme Court, we believe the apprehension of criminals to be a goal of the state, but we are "not convinced that the use of deadly force is a sufficiently productive means of accomplishing [that goal] to justify the killing of nonviolent suspects." *Id.* at 10, 105 S.Ct. at 1700. More importantly, we believe the New Mexico legislature is equally persuaded and has so indicated in the language of Section 30–2–7(C). Specifically, we refer to the requirement of Section 30–2–7(C), that a homicide by a private citizen like Aaron Johnson is justifiable only if "necessarily committed ... by lawful ways and means," meaning that deadly force in the apprehension of suspected felons is justifiable only when the citizen has probable cause to believe he or she is threatened with serious bodily harm or the use of deadly force.

## CONCLUSION

■ 28. Because there was no evidence that Defendant could satisfy such a justification for the use of deadly force, the trial

court properly refused the requested instruction. Accordingly, the judgment and sentence of the trial court is hereby affirmed.

29. **IT IS SO ORDERED.**

ALARID and PICKARD, JJ., concur.

1998-NMCA-030