**Certiorari Granted, February 14, 2017, No. S-1-SC-36269**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2017-NMCA-029**

**Filing Date:  December 20, 2016**

**Docket No. 33,798**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**CHIP FOX,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Chief Judge.**

**{1}** Defendant appeals from a jury verdict finding him guilty of voluntary manslaughter, in violation of NMSA 1978, Section 30-2-3(A) (1994), and felony and criminal solicitation to commit tampering with evidence, in violation of NMSA 1978, Section 30-28-3(A) (1979). Concluding that the evidence supports the convictions, we affirm, but remand the case to the

1

district court to correct a clerical error in the judgment, sentence, and order determining habitual offender status.

## I. BACKGROUND

**{2}** On August 16, 2012, Defendant, his girlfriend Tiffany Pryor, and his friend Kevin Reardon were visiting Defendant's aunt at her home in Clovis, New Mexico. While Defendant and Kevin were changing a tire, Kevin was stabbed. After the stabbing, Defendant went next door where his childhood friend Chad Jackson lived. Defendant was holding a bloody knife and looked terrified. Defendant told Chad, "I stabbed my best friend, and I'm scared, and I don't know what to do." Defendant also said that when Kevin became aggressive and repeatedly charged at him, Defendant told Kevin he had a knife and to leave him alone. Defendant said, "My friend charged me and ran into the knife, and I stabbed him, and I'm scared, and I don't know what to do." Chad told Defendant to put the knife on a nearby table, and Defendant complied.

**{3}** When Officer Jimmy Brown arrived on the scene, Defendant denied knowing what had happened. Officer Brown also spoke to Kevin, who was sitting on the aunt's porch, bleeding, and going in and out of consciousness. Kevin said he was "talking shit to somebody" who then stabbed him. The ambulance arrived and took Kevin to the hospital. Detective Rick Smith met with Kevin at the hospital, and asked Kevin what had happened. Kevin answered that he was "talking shit and my homie stabbed me." After initially refusing to identify who stabbed him, Kevin identified Defendant. Later Kevin died from the stabbing.

**{4}** At the scene, Officer Brown placed Defendant in investigative detention after speaking to Chad. In an interview at the police station, Defendant eventually admitted he stabbed Kevin, but asserted he did not mean to do so and never intended to hurt him. While he initially said he could not explain the reason for Kevin's aggression, Defendant later said that Kevin had become enraged while sniffing or "huffing" Dust-Off and started swinging his fists at Defendant, making him afraid. Defendant said he tried to calm Kevin down and pushed him away but Kevin kept coming at him, and eventually ran into the knife in Defendant's hand. Defendant explained that the knife was part of the camping gear he was putting into the car at the time. The Chief Medical Investigator agreed that while it was possible for Kevin's wound to have been caused by Kevin moving toward the knife and falling on it if it was held rigidly, it was his opinion this was not likely, and that Kevin's wound was more consistent with being stabbed by the thrust of a knife.

**{5}** The police investigation included a search of the property where they found Dust-Off cans, including some cans in a black backpack. Defendant called Tiffany from the jail. When Tiffany told Defendant the police were going to take Defendant's black backpack with six Dust-Off cans in it, Defendant asked her to get the backpack out of the house. Tiffany told Defendant she could not because the police were "everywhere" in the house. Defendant then asked Tiffany to pull all his "shit" out of the backpack and tell the police it was someone

2

else's backpack. Tiffany told Defendant the other person's backpack "is in the car," and Defendant told Tiffany to tell the police he had two backpacks. Defendant then told Tiffany, "If they ask you, just tell them the truth[.]"

**{6}** The jury found Defendant guilty of voluntary manslaughter as a lesser included offense to the charge of second degree murder and solicitation to commit tampering with evidence. A judgment, sentence, and order determining habitual offender status was then filed, and Defendant appeals.

## II. DISCUSSION

**{7}** Defendant raises three issues on appeal; however, these issues raise challenges to the sufficiency of the evidence for each conviction. We therefore consolidate the appeal into two issues and analyze Defendant's sufficiency of the evidence arguments as they relate to each conviction.

**{8}** Our review of the sufficiency of the evidence is highly deferential. *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930, *cert. quashed*, 2015-NMCERT-001, 350 P.3d 92. "When reviewing a challenge to the sufficiency of the evidence, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Carpenter*, 2016-NMCA-058, ¶ 10, 374 P.3d 744 (internal quotation marks and citation omitted). Under this standard, we view "the evidence in the light most favorable to the state, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *Id.* (alteration, internal quotation marks, and citation omitted). "The appellate courts do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Slade*, 2014-NMCA-088, ¶ 13 (internal quotation marks and citation omitted). "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alterations, internal quotation marks, and citation omitted).

### A. Sufficient Evidence for Voluntary Manslaughter

**{9}** Under the jury instructions for voluntary manslaughter, the State was required to prove beyond a reasonable doubt that "[D]efendant killed Kevin[,] . . . [D]efendant knew that his acts created a strong probability of death or great bodily harm to Kevin[, . . . and] did not act in [self-defense.]" With regard to self-defense, it "is only a justification for a killing, and thus a lawful act, if all the elements necessary for self-defense are met." *State v. Abeyta*, 1995-NMSC-051, ¶ 23, 120 N.M. 233, 901 P.2d 164, *abrogated on other grounds by State v. Campos*, 1996-NMSC-043, ¶ 32 n.4, 122 N.M. 148, 921 P.2d 1266. In order to find that Defendant acted in self-defense, the jury was required to find, in pertinent part, that "[a] reasonable person in the same circumstances as [D]efendant would have acted as [D]efendant did." *See State v. Johnson*, 1998-NMCA-019, ¶ 14, 124 N.M. 647, 954 P.2d 79

3

("One requirement of self-defense is that the force used must be reasonable in relation to the threat." (internal quotation marks and citation omitted)). "If excessive force is exerted, the entire action becomes unlawful." *Id.*

{10}    In the instructions on voluntary manslaughter, the jury was specifically instructed that "[t]he difference between second degree murder and voluntary manslaughter is sufficient provocation[,]" because "[i]n second degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation." The jury was further instructed that "[i]n the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter." "Sufficient provocation," the jury was told, is "any action, conduct or circumstance which arouse[s] anger, rage, fear, sudden resentment, terror or other extreme emotions[,]" and "must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition" and that the " 'provocation' is not sufficient if an ordinary person would have cooled off before acting." *See State v. Melendez,* 1982-NMSC-039, ¶ 9, 97 N.M. 738, 643 P.2d 607 ("Provocation supporting a conviction for voluntary manslaughter, on the other hand, is an act committed under the influence of an uncontrollable fear of death or great bodily harm, caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense." (internal quotation marks and citation omitted)).

{11}    Defendant contends that it was unreasonable for the jury to reject his plea of self-defense, and that the killing here could not have been more than involuntary manslaughter. We disagree. When the facts support a plea of self-defense, "it is not unreasonable that if the plea fails, the accused should be found guilty of voluntary manslaughter." *Id*. ¶ 9 (internal quotation marks and citation omitted). "[T]he critical difference between self-defense and voluntary manslaughter lies not in provocation or the emotion of fear, but rather in the reasonableness of the defendant's conduct in killing." *Abeyta*, 1995-NMSC-051, ¶ 17 (internal quotation marks and citation omitted). As we have reiterated, "reasonableness in the use of force is generally a matter for the jury."*Johnson*, 1998-NMCA-019, ¶ 16.

{12}    After reviewing the record in accordance with our mandated standard of review, we conclude that the State presented sufficient evidence for the jury to find sufficient provocation, and that Defendant's actions were not taken in self-defense. The jury could properly find that Kevin's actions in repeatedly charging at Defendant aroused sufficient fear in Defendant, which would affect the ability to reason and  cause a temporary loss of self control, but that a reasonable person in the same circumstances would not have used a knife to stab Kevin when Kevin did not have a weapon. *See Abeyta*, 1995-NMSC-051, ¶ 17 ("If the jury rejects the theory of self-defense, it may still find the defendant acted under provocation of fear and may mitigate the charge of murder to the lesser charge of voluntary manslaughter."). The jury was free to accept Defendant's version of the facts to find sufficient provocation, and it was also free to reject Defendant's version of the facts that he acted as a "reasonable person" under the circumstances and therefore failed to act in self-

4

defense. *See State v. Stefani*, 2006-NMCA-073, ¶ 39, 139 N.M. 719, 137 P.3d 659 (recognizing that "the jury was free to believe or disbelieve [the defendant's] theory").

## B.      Sufficient Evidence for Solicitation

**{13}**     Defendant argues that there was insufficient evidence to convict him of criminal solicitation to commit tampering with evidence.

**{14}**     Defendant's arguments require us first to consider the statutory framework. Section 30-28-3(A) makes criminal solicitation a crime. It requires the perpetrator to intend "that another person engage in conduct constituting a felony[.]" *Id*. When the perpetrator has this intent and "solicits, commands, requests, induces, employs or otherwise attempts to promote or facilitate another person to engage in conduct constituting a felony," criminal solicitation is committed. *Id*. Criminal solicitation is punishable as a second, third, or fourth degree felony depending on the degree of the felony solicited. Section 30-28-3(E).

**{15}**     The substantive crime of tampering with evidence "consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." NMSA 1978, § 30-22-5(A) (2003). Tampering with evidence is punishable as a third degree felony if the tampering relates to a capital, first degree, or second degree felony; it is punishable as a fourth degree felony if the tampering relates to a third degree or fourth degree felony; and it is punishable as a petty misdemeanor if the tampering relates to a misdemeanor or petty misdemeanor. Section 30-22-5 (B)(1)-(3). Applicable to this case, where the tampering relates to a crime that is "indeterminate," it is punishable as a fourth degree felony. Section 30-22-5(B)(4).

**{16}**     In order to find Defendant guilty of criminal solicitation to commit tampering with evidence, the jury was instructed that it was required to find beyond a reasonable doubt that "[D]efendant intended that another person commit the crime of [t]ampering with [e]vidence[,]" and "solicited, commanded, or requested the other person to commit the crime of [t]ampering with [e]vidence[.]" *See* UJI 14-2817 NMRA. "[A] charge of solicitation is complete when the solicitation to commit the intended felony is made and it is immaterial that the object of the solicitation is not carried out or that no overt steps were in fact taken toward the consummation of the offense." *State v. Cotton*, 1990-NMCA-025, ¶ 26, 109 N.M. 769, 790 P.2d 1050. Because Section 30-28-3(A) requires that the crime solicited is a felony, the jury was also given an instruction on the essential elements of tampering with evidence. This instruction advised the jury that the elements of tampering with evidence required proof that "[D]efendant destroyed, changed, hid, fabricated or placed a backpack[,]" and that "[D]efendant intended to prevent the apprehension, prosecution or conviction of himself [or] to create the false impression that another person had committed a crime[.]"

**{17}**     Defendant asserts that the only "crime" the tampering of evidence could relate to is possession of inhalants, a misdemeanor. NMSA 1978, § 30-29-2 (1979). Because criminal

solicitation requires that the crime solicited is a felony, Defendant contends that his conviction cannot stand. Moreover, Defendant asserts, because the crime to which the tampering related was not unknown or undetermined, his conviction for criminal solicitation of an "indeterminate" crime fails. In support of this argument, Defendant relies on *State v. Jackson*, 2010-NMSC-032, 148 N.M. 452, 237 P.3d 754. Finally, Defendant asserts that the criminal solicitation conviction must be set aside because he renounced his request to tamper with evidence.

**{18}** *Jackson* is of no assistance to Defendant here. In *Jackson*, the defendant entered into a conditional guilty plea to tampering with evidence by providing a false urine sample while on probation. *Id.* ¶¶ 3, 5. The defendant argued on appeal that tampering with evidence requires proof of tampering with evidence of a separate, underlying crime, and that while providing a false urine sample to his probation officer might constitute a probation violation, it was not an independent crime. *Id.* ¶¶ 4, 6. Our Supreme Court disagreed and held that the "indeterminate crime" provision of Section 30-22-5(B)(4) applies "to punish acts of tampering with evidence where no underlying crime could be identified." *Jackson*, 2010-NMSC-032, ¶ 21. An example where a crime could not be identified is *State v. Alvarado*, 2012-NMCA-089, ¶ 14, ___ P.3d ___. In *Alvarado*, as in this case, the jury instruction on tampering with evidence did not require the jury to determine what crime, if any, to which the tampered evidence related. *Id.* ¶¶ 10, 14. We held that under these circumstances, the defendant must be sentenced under the "indeterminate crime" provision of Section 30-22-5(B)(4). *Alvarado*, 2012-NMCA-089, ¶ 14. We also recently recognized in *State v. Radosevich* that "tampering with evidence can be a stand-alone crime that is not tied to a separate crime." 2016-NMCA-060, ¶ 25, 376 P.3d 871, *cert. granted*, 2016-NMCERT-007, ___ P.3d ___, (No. 35,864, July 1, 2016). "Where there is no separate, identified crime, the tampering offense is linked to an indeterminate crime under Section 30-22-5(B)(4), and is punished as a fourth-degree felony." *Radosevich*, 2016-NMCA-060, ¶ 25. Since the jury was not required to find in the instruction that "[the d]efendant tampered with any particular crime or degree of crime, tampering was instructed as a stand-alone crime." *Id.* ¶ 31. We therefore review whether there was sufficient evidence under our mandated standard of review to convict Defendant of criminal solicitation to commit tampering with evidence as a stand-alone crime.

**{19}** Defendant called Tiffany from the jail knowing that the police were present and investigating the stabbing. Defendant had already told the police the stabbing resulted from Kevin becoming enraged from sniffing or "huffing" Dust-Off. When Tiffany told Defendant that the police were going to take his black backpack with Dust-Off cans inside it, Defendant told her to take it out of the house. Tiffany told Defendant she could not because the police were everywhere, and Defendant asked her to take the Dust-Off cans out of the backpack and tell the police the backback belonged to someone else. The evidence clearly supports findings that Defendant intended Tiffany to tamper with evidence consisting of his backpack and the Dust-Off cans inside it and that Defendant requested Tiffany to tamper with that evidence by concealing it and lying about ownership of the backpack, for the purpose of preventing his prosecution or conviction for stabbing Kevin. This was all that was required

6

under the instructions given to the jury. We therefore conclude that sufficient evidence supports Defendant's conviction of criminal solicitation to commit tampering with evidence as a stand-alone crime and reject Defendant's sufficiency of the evidence arguments.

**{20}** This brings us to Defendant's last argument that, as a matter of law, he voluntarily withdrew his criminal solicitation to Tiffany when he told her to tell the truth if police officers questioned her. It is an affirmative defense in a prosecution for criminal solicitation when "under circumstances manifesting a voluntary and complete renunciation of criminal intent, the defendant: (1) notified the person soliticited; and (2) gave timely and adequate warning to law enforcement authorities or otherwise made a substantial effort to prevent the criminal conduct solicited." Section 30-28-3(B). We have already concluded that the evidence is sufficient to support Defendant's conviction for criminal solicitation to commit tampering with evidence. At best, therefore, the evidence on whether Defendant presented sufficient evidence on the affirmative defense is conflicting, and there was no error in failing to direct a verdict in Defendant's favor. *Cf. Gutierrez v. Valley Irrigation & Livestock Co.*, 1960-NMSC-124, ¶¶ 15-16, 68 N.M. 6, 357 P.2d 664 (stating that where the evidence is capable of differing interpretations in connection with an affirmative defense, a jury question is presented). Moreover, because Defendant did not argue that the evidence supported the affirmative defense as a matter of law, nor request an instruction on the affirmative defense, he waived the defense. *See State v. Kerby*, 2005-NMCA-106, ¶ 39, 138 N.M. 232, 118 P.3d 740 (stating that an affirmative defense can be "forfeited" by a defendant's failure to assert it in a timely manner); *see State v. Savage*, 1992-NMCA-126, ¶¶ 10-11, 115 N.M. 250, 849 P.2d 1073 (stating that an affirmative defense must be raised in the district court and preserved for review by submitting a requested instruction on the defense); *see also* § 30-28-3(B) (stating that the burden of raising the affirmative defense is on the defendant).

**{21}** To conclude our discussion regarding Defendant's conviction in this regard, we note that a correction must be made to the judgment, sentence, and order determining habitual offender status. The document correctly recites that Defendant was convicted of solicitation to commit tampering with evidence, but it incorrectly cites to the tampering with evidence statute, Section 30-22-5. Although it will not alter the sentence imposed, we remand this case to the district court to correct this clerical error to substitute Section 30-28-3 (A) and (E)(3).

## III.    CONCLUSION

**{22}** We remand this case to the district court to correct the judgment, sentence, and order determining habitual offender status, and otherwise affirm Defendant's convictions and sentence.

**{23}    IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**


_____
**J. MILES HANISEE. Judge**

8